## JAMES WALKER GRAYSON *v.* STATE OF MARYLAND

[No. 53, Initial Term, 1967.]

*Decided August 1, 1967.*

The cause was argued before ANDERSON, MORTON, ORTH, and THOMPSON, JJ., and RUSSELL, J., Associate Judge of the Eighth Judicial Circuit, specially assigned.

*Fred E. Weisgal* for appellant.

*Donald Needle, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Charles E. Moylan, Jr., State's Attorney for Baltimore City,* and *Bernard L. Silbert,*

*Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

ANDERSON, J., delivered the opinion of the Court.

Appellant, James Walker Grayson, was convicted in the Criminal Court of Baltimore by a jury, Judge Anselm Sodaro presiding, of two offenses, murder in the first degree, and armed robbery, and received sentences of life imprisonment and fifteen years, both in the Maryland Penitentiary, to run concurrently. From his convictions and sentences, he has appealed.

Two questions only are presented for our consideration:

1. Did the introduction into evidence of statements made by appellant to the police constitute a violation of appellant's rights under the Fifth, Sixth and Fourteenth Amendments of the United States Constitution?
2. Did the absence of any significant representation of Negroes from both the jury and the panel from which it was selected constitute a violation of appellant's rights to due process and the equal protection of the law?

On September 26, 1964, George Bockman, a young white male, was brutally murdered in a park in Baltimore City. At the time of the murder, the appellant, a seventeen year old Negro, and Preston Hargis, a fifteen year old Negro co-defendant, (who was himself convicted of first degree murder of the same victim and sentenced to life imprisonment) were in the company of the victim. The murder weapon, a large iron pipe, was found at the scene of the crime. The most significant testimony produced by the State was that of Preston Hargis, the co-defendant, who testified that he and the appellant attacked the deceased and struck him repeatedly with the iron pipe and afterwards robbed him. The testimony of Hargis was corroborated by oral incriminatory statements which appellant made to the police. Officer Edward Johnson related that he was called to the Western District Police Station at approximately 4:00 p.m. to meet appellant, who had voluntarily appeared at the station and requested to speak to Officer Johnson, known to appellant as Officer Eddie, about a murder. When

the officer arrived he stated that he was told by the appellant "Hello Officer Eddie. I really want to see you;" and that the appellant "wanted to get this thing off his mind, he wanted to talk to me about it." After a brief conversation in the back yard of the Western District Police Station, appellant voluntarily agreed to go with Officer Johnson to the Southwestern District Police Station where the officer was then stationed.

At the Southwestern District Police Station he was taken to the Sergeant's Room by Officers Johnson and Cooke where he was met by Lieutenant Cadden. While there appellant related that he was with Preston Hargis when Preston Hargis struck the deceased over the head with a piece of pipe. He also stated that he (appellant) took the victim's watch, wallet and dog tags. All statements made by appellant were volunteered by him and were made without force, promise, offer of immunity, or duress. He was not advised of any constitutional rights prior to making these statements. Immediately after these statements were made the appellant was told that he would be placed under arrest. He was advised of his rights and stated he did not desire counsel. He then signed a police department form consenting to a search of his home. The consent was given voluntarily and without threats or promises of any kind. Appellant's mother signed a similar form. After his statement appellant accompanied three members of the police department to his home and showed them various places in his home and nearby where he had hidden articles taken from the deceased, among which were the "dog tags" appellant had buried in the yard. At the time of the offenses the appellant was in the 11th grade at Edmondson High School and was an average student.

When the cases were called for trial the appellant entered pleas of "not guilty" to each indictment and elected to be tried by a jury. Prospective jurors were examined on their voir dire, and at least five preemptory challenges were exercised by the defense. No challenges were made by the State. The selected panel was said to be "acceptable to the defense." At this point defense counsel stated an objection to the jury array which included forty-eight white persons and two Negroes; and he also stated an objection to the composition of the selected petit jury which consisted of one Negro and eleven white

persons. The objection was based upon counsel's statement that statistics indicated that the Negro population of Baltimore City was at least 40% of the total population. Counsel offered no evidence to support his contention.

I

Appellant argues in support of his first contention that it cannot be directly said that his statement was freely and voluntarily given. He admits there was no police abusiveness and that appellant spoke willingly, but argues that the voluntary character of the statement was belied by the deceptiveness of the situation. He argues that the police were aware that appellant was deeply disturbed as a result of his being involved in the events leading up to the death of George Bockman and further aware that appellant was endeavoring to act in his best interest in the hope of exculpating himself. He contends that the police deliberately allowed appellant to implicate himself in the belief that he must give a statement, without knowledge of his right to assistance of counsel. Citing *Powell, et al. v. Alabama*, 287 U. S. 45, 77 L. Ed. 158 (1932); *Massiah v. United States*, 377 U. S. 201, 12 L. Ed. 2d 246 (1964); *Escobedo v. Illinois*, 378 U. S. 478, 486, 12 L. Ed. 2d 977 (1964). Here the appellant seeks to exclude an exculpatory statement which he contends had the effect of implicating him and subjecting him to a conviction based upon the testimony of a co-defendant. Appellant states in his brief that in ordinary cases if a statement introduced is willingly given and incriminating, it is a reliable indication of guilt, even if given in ignorance of constitutional rights, and, in the ordinary case, if the statement is legally exculpatory, there is little danger that can result from its introduction. He contends that it is only in such a unique case as the present case in which the introduction of an exculpatory statement enables a conviction to be based upon the testimony of a co-defendant that there exists a very real danger of a conviction of an innocent individual. Appellant claims such was the situation here where he should have been advised as to his rights to have counsel before making any statement.

Appellant admits that the Court of Appeals of Maryland, as recently as *Campbell v. State*, 240 Md. 59, 212 A. 2d 747

(1965), has expressed the view that a confession is not inadmissible under the decision of *Escobedo v. Illinois, supra,* unless there is evidence that the accused had requested the assistance of counsel and that his request had been denied; or unless his statement was otherwise not freely and voluntarily given under the totality of the attendant circumstances. Citing *Cowans and Hayes v. State,* 238 Md. 433, 209 A. 2d 552 (1965). Appellant does not contend the holding in *Miranda v. Arizona,* 384 U. S. 436, 16 L. Ed. 2d 694 (1966) has applicability to the present case since it has been clearly established by *Johnson v. New Jersey,* 384 U. S. 716, 16 L. Ed. 2d 882, and *Westfall v. State,* 243 Md. 413, 221 A. 2d 646 (1966) that the specific standards established by *Miranda, supra,* should have applicability only to cases in which trial commences subsequent to the date (June 13, 1966) of the *Miranda* decision. He contends, however, that under the language as expressed by the Court of Appeals of Maryland in *Cowans and Hayes v. State, supra,* at pages 436 and 437, the statement made by the appellant cannot be said to have been freely and voluntarily given under totality of the attendant circumstances.

Here, however, the facts reveal that appellant knew that the police were looking for him. He also feared that the co-defendant, Hargis, would implicate him in the murder. With this thought in mind he voluntarily went to the Western District to explain that he was not implicated in the murder. The statement given to the police was exculpatory and by his own admission he spoke willingly. His argument cannot come under *Escobedo v. Illinois, supra,* since he never requested counsel and after giving his statement he said that he did not desire counsel.

In *Davis v. North Carolina,* 384 U. S. 737, 16 L. Ed. 2d 895 (1966), however, the Supreme Court decided that in cases before *Miranda, supra,* failure to advise an accused of his right to have counsel present during interrogation and failure to advise him of his right to remain silent are "significant factors" in determining the voluntariness of a confession, although a conviction based on such a confession will not be reversed on these grounds alone. The record in this case fails to disclose any of these "other factors" which would have made appellant's

statement involuntary. In *Davis v. North Carolina, supra,* the defendant had only a third or fourth grade education, and was an impoverished Negro; a directive was contained in his arrest sheet that no one was to see the accused; he was not permitted to use the telephone; he was held incommunicado during sixteen days of detention and interrogation; and his diet was extremely limited. We have none of these factors here and we further have his own admission that he spoke willingly.

The record transcript here discloses that on October 1, 1964, the appellant voluntarily appeared at the Western District Police Station and sought out a police officer he had some previous acquaintance with, in an effort to extricate himself from the web that he knew was fast closing around him. In his statement, which was exculpatory, he sought to explain away his involvement in the murder. The trial Judge concluded the statements made by him were voluntary and they were admitted in evidence over appellant's objection. We find his ruling to be correct, and appellant's first contention to be without merit.

II

Appellant's second contention is that the absence of any significant representation of Negroes on either the jury or the panel from which it was selected was a violation of appellant's rights to due process and equal protection of the law.

The record transcript discloses that after the jury had been selected and after announcing that the jury as selected was "acceptable to the defense," defense counsel at the bench and out of hearing of the jury, noted for the record an objection to the composition of the jury panel consisting of forty-eight white persons and two Negroes, and also to the composition of the jury consisting of eleven white persons and one Negro in view of the fact that the defendant was a Negro, and also to the entire panel based on the alleged fact that statistics show that in Baltimore City the population is at least 40% Negro and such alleged exclusion is prejudicial to the defendant and deprives him of a fair and impartial trial. The court then stated that he knew of no systematic exclusion and overruled the objection and denied the motion.

Without admitting that the issue was properly raised since

appellant failed to comply with Maryland Rule 744 b (challenge to the array) and Maryland Rule 725 b and c (defenses and objections based on defects in the institution of the prosecution or in the indictment), we find no merit to this contention.

Here the record is devoid of any evidence to substantiate appellant's claim. There was no evidence that Negroes had been intentionally excluded, and no showing of any prejudice to the appellant. Unless the absence of Negroes from a jury panel is proven by competent evidence to be by purposeful discrimination or design, appellant's bald assertion that he had been denied a fair and impartial trial will not be sustained. See *Giles v. State,* 229 Md. 370, 183 A. 2d 359 (1961); *Jackson v. State,* 180 Md. 658, 26 A. 2d 815 (1942); *Zimmerman v. State,* 191 Md. 7, 59 A. 2d 675 (1948), aff'd. 336 U. S. 901 (1949); *U. S. ex rel. Jackson v. Brady,* 133 F. 2d 476 (4th Cir. 1943), cert. den. 319 U. S. 746 (1943), reh. den. 319 U. S. 784 (1943); *Swain v. Alabama,* 380 U. S. 202, 13 L. Ed. 2d 759, 85 S. Ct. 824 (1965).

Appellant advances the argument that a prima facie case of discrimination can be established on the basis of a particular jury or jury panel and if on the basis of a particular jury or jury panel racial discrimination is obvious on its face, the burden falls upon the State to establish that the jury panel has been properly impaneled. To support this argument he relies upon *Cassell v. Texas,* 339 U. S. 282, 70 S. Ct. 629 (1950); and *Avery v. Georgia,* 345 U. S. 559, 73 S. Ct. 891 (1953). Neither case supports his theory. In *Cassell v. State, supra,* the defendant produced clear proof of the intentional exclusion of Negroes on the grand jury which indicted him. There the jury commissioners testified that no Negroes were selected for the grand jury because they chose jurymen only from people with whom they were personally acquainted and they knew no Negroes who were eligible and available for grand jury service. In *Avery v. Georgia, supra,* the defendant showed by convincing proof (not rebutted by the State) that separately colored tickets were used in the jury selection procedure (white tickets for whites and yellow tickets for Negroes), and that not a single Negro was selected to serve on

a panel of sixty although many Negroes were qualified and available.

A defendant, objecting to a jury because of alleged discrimination against members of his race, in the selection thereof, must offer proof of such discrimination. *Swain v. Alabama, supra.* See also *Whitus v. Georgia,* 385 U. S. 545, 87 S. Ct. 643 (1967) where the Court said: "The burden is, of course, on the petitioners to prove the existence of purposeful discrimination, *Tarrance v. State of Florida,* 188 U. S. 519, 23 S. Ct. 402, 47 L. Ed. 572 (1903). However, once a prima facie case is made out the burden shifts to the prosecution." There the Court found the proof offered by the petitioners constituted a prima facie case of purposeful discrimination, and that the State failed to meet the burden of rebutting the petitioners' prima facie case.

Here appellant offered no proof to support his claim of discrimination against him in the selection of the jury or jury panel save the unsupported statement of counsel. Furthermore, it was admitted that two Negroes were on the panel from which the petit jury was selected and one Negro was on the petit jury which tried the appellant. The judgments appealed from are, therefore, affirmed.

*Judgments affirmed.*