JOHN ALLEN WATTS *v.* STATE OF MARYLAND

[No. 78, September Term, 1967.]

*Decided April 1, 1968.*

The cause was argued before MURPHY, C. J., and ANDERSON, MORTON, ORTH, and THOMPSON, JJ.

*Jack E. Richards* for appellant.

*Jon F. Oster, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General,* and *Charles E. Moylan, Jr., State's Attorney for Baltimore City,* on the brief, for appellee.

ANDERSON, J., delivered the opinion of the Court.

The appellant, John Allen Watts, was tried by a jury, Judge Charles D. Harris, presiding, in the Criminal Court of Baltimore, under six indictments containing multiple counts, charging him with robbery with a deadly weapon, carrying a deadly weapon openly with intent to injure, and assault with intent to murder. He was convicted under the first count of Indictment No. 1 (armed robbery); under the third, fourth, fifth, sixth and seventh counts of Indictment No. 2 (carrying a deadly weapon openly with intent to injure); and under the first count of Indictments Nos. 3, 4, 5 and 6 (assault with intent to murder). In Indictment No. 1 he was sentenced to twenty (20) years in the Maryland Penitentiary; in Indictment No. 2 sentence was suspended generally; and in Indictments Nos. 3, 4, 5 and 6 he was sentenced to ten years in the Maryland Penitentiary under each indictment, sentences to run concurrently with the sentence imposed in Indictment No. 1. From his convictions he appeals to this Court.

On December 21, 1966, at approximately 2:00 p.m., the State Finance Corporation located on the second floor of 5414 Har-

ford Road in Baltimore was robbed of $615.00. The robber was described as a tall thin man, approximately six feet in height, weighing around 165-170 pounds, wearing a black felt hat, sunglasses to which were taped a blue handkerchief, a three-quarter length black topcoat with a fur collar, black gloves, and carrying a sawed-off shotgun to which was taped a strap that went around his right shoulder. There were four employees in the office: Lewis McKnight, the Branch Manager, Francis P. Saraullo, Assistant Manager, John Marks, a Collector, and Florence Crawford, a Cashier. The robbery was carried out at gun point and McKnight was forced to open the cash drawer and the safe from which the money was removed. After the robbery, the employees were herded into a small utility room and told to lie down. The door was closed and the robber placed three television sets against it. After Saraullo, who remained standing and could observe the robber through a metal grate in the door, saw the robber leave, he pushed the door open and ran down the steps and out on the street where he saw the bandit at the cornor of Gibbons Avenue and Harford Road. When the robber, who had removed his sunglasses, saw him he ran to his automobile, a maroon colored Thunderbird with black top, and jumped in. The motor started but cut off briefly and before he could get away Saraullo was able to take down the license number. The automobile then proceeded west on Gibbons Avenue.

Officer DiPino, the arresting officer, testified that he was on routine patrol when he learned of the robbery of the State Finance Corporation. He went directly to the corner of Harford Road and Gibbons Avenue, where he was accosted by the witness Saraullo, who got into the police car and gave the officer the license number of the bandit's car, which was still in view proceeding west on Gibbons Avenue. Officer DiPino pursued the robber's car west on Gibbons Avenue and kept it in view until it stopped at a traffic light at McClean Boulevard and Perring Parkway. The officer pulled in behind the robber's car, saw that the license number corresponded with that furnished him by Saraullo, and jumped from the police car, with pistol drawn, and ordered the bandit out of the car. He placed him under arrest, and at that time could observe through the win-

dow the barrel of a shotgun partially covered by a black coat on the front seat. He radioed for assistance and upon the arrival of assistance, searched appellant's car and removed therefrom a sawed-off shotgun with strap taped thereto, a three-quarter length black topcoat with fur collar, which were on the front seat, and a black felt hat and light jacket, which were on the back seat. In the left coat pocket of the black topcoat was found $615.00 and in the right coat pocket the sunglasses with the handkerchief taped to the bottom and the black gloves. Saraullo also jumped from the police car at the time of the arrest and saw the shotgun and coat through the car window and was present when the articles were removed. He identified appellant to Officer DiPino as the robber.

Appellant raises four contentions on appeal:

1. That the court erred by allowing the State's witnesses to remain in the courtroom after a motion to exclude all witnesses.

2. That the court erred by failing to grant the defendant's motion for a mistrial.

3. That the court erred by (a) its failure to hold an exclusionary hearing out of the presence of the jury on the limited issue of probable cause; and (b) by permitting illegally seized evidence to be submitted to the jury for its consideration.

4. That the court erred by failing to find that the offense of carrying a deadly weapon openly with intent to harm as charged in Indictment No. 2 merged with the offense of assault with intent to murder as charged in Indictments Nos. 3, 4, 5 and 6.

I

Appellant's first contention that the trial court's failure to exclude the witnesses immediately upon counsel's motion resulted in prejudicial error is not supported by the record. The record as set forth below reveals that the witnesses were excluded after counsel's motion and immediately after the jury was sworn and is as follows:

> "(The Clerk) John Allen Watts, would you stand
> up?

(Mr. White) At this time, before this occurs, I am going to move that all witnesses be excluded.

(The Court) Prior to the swearing of the Jury?

(Mr. White) It doesn't make any difference.

(The Court) If it doesn't make any difference, swear the jury and then all witnesses will be excluded.

(The Clerk) John Allen Watts, remain standing, please. Members of the Jury, stand and raise your right hand. (Thereupon all members of the Jury panel were duly sworn.)

(The Clerk) All witnesses in the cases of the State of Maryland versus John Allen Watts, would you retire to the hallway until you are called; that is, witnesses for the State or the Defense?"

The record indicates that no motion was made to exclude witnesses before the clerk asked appellant to stand and further shows that appellant's counsel not only failed to object to the jury being sworn prior to the witnesses being excluded, but, in fact, concurred in this procedure.

The purpose for excluding witnesses is to prevent prejudice. *Swift v. State,* 224 Md. 300, 306, 167 A. 2d 762 (1961); *Bulluck v. State,* 219 Md. 67, 70, 71, 148 A. 2d 433 (1959); *Breeding v. State,* 220 Md. 193, 151 A. 2d 743 (1959). We find no prejudicial error in swearing the jury prior to excluding the witnesses since appellant failed to object, and, inasmuch as appellant concurred in this procedure, we find compliance with Maryland Rule 753.

## II

Appellant next contends that he was not given a fair and impartial trial because the court failed to grant his motion for a mistrial. His motion arose out of a question asked by appellant's attorney to Officer DiPino, the arresting officer. The witness was asked, "Did you conduct a lineup that day?" The witness answered, "No, sir, not that day. A lineup was to be conducted but you refused to let him stand in the lineup and we had the confrontation—." Counsel then objected to the answer and moved for a mistrial. The trial court denied the motion,

but struck out that portion of the answer relating to advice given the defendant by his counsel.

The granting of a motion for a mistrial is within the discretion of the trial judge. *Lusby v. State,* 217 Md. 191, 195, 141 A. 2d 893 (1958); and we find nothing in the record to indicate any abuse of discretion on the part of the lower court. No lineup was ever conducted, and this must have been known to appellant's attorney when he asked the question. The question of prejudice is a matter which the trial court is in the best position to judge and its decision should not be reversed unless it is clear there was prejudice. *Lusby v. State, supra,* 195. We find no prejudice.

Moreover, appellant was positively identified at the trial by three of the four employees of the State Finance Corporation present at the time of the robbery.

### III

Appellant's third contention is twofold: (a) That the court failed to hold an exclusionary hearing out of the presence of the jury on the limited issue of probable cause; and (b) that the court committed error in allowing illegally seized evidence to be submitted to the jury for its consideration.

We find no merit to either contention. There was no reason for the court to hold an exclusionary hearing out of the presence of the jury on the limited issue of probable cause since appellant failed to challenge the legality of the arrest nor did he raise the issue of lack of probable cause or reasonable grounds for the arrest. Instead, he moved to exclude the evidence obtained from appellant's automobile on the grounds that appellant was arrested outside his automobile, and therefore the police officer was only authorized to search the appellant's person and not his automobile without a search warrant. The lower court properly denied the motion to exclude the evidence previously admitted. If the arrest was legal, the search, which was contemporaneous with the arrest, was legal and the articles found in appellant's automobile were properly admitted in evidence. *Dixon v. State,* 1 Md. App. 623, 626, 232 A. 2d 538, 540 (1967); *Barton v. State,* 2 Md. App. 52, 59, 233 A. 2d 330, 335 (1967); *Lamot v. State,* 2 Md. App. 378, 384, 234 A. 2d 615 (1967).

Moreover, the lower court found there was "overwhelming evidence that the officer had probable cause and reasonable grounds to believe that a felony had been committed and that the defendant had participated in or committed that felony." We agree with the finding of the lower court. Knowing that a felony had been committed, the police officer had probable cause under the circumstances of this case to believe that the appellant was the criminal. *Cottrell v. State,* 1 Md. App. 520, 522, 231 A. 2d 919 (1967) and cases cited.

## IV

Appellant's fourth and final contention raises an interesting question. Does the offense of carrying a dangerous and deadly weapon openly with intent to injure a certain named person merge into the greater offense of assault with intent to murder that particular person? Here, appellant was convicted under the third, fifth, sixth and seventh counts of Indictment No. 2 with the offense of carrying a dangerous and deadly weapon openly with intent to injure Lewis McKnight (third count), Paul Saraullo (fifth count), John Marks (sixth count), and Florence Crawford (seventh count). Also, appellant was found guilty under Indictment Nos. 3, 4, 5 and 6 with assault with intent to murder Lewis McKnight (No. 6), Paul Saraullo (No. 3), John Marks (No. 4) and Florence Crawford (No. 5).

Since the offense of carrying a dangerous and deadly weapon openly with intent to injure each of the above-named persons (a misdemeanor) was a necessary ingredient of the greater offense of assault with intent to murder each of the above-named parties (a felony), we find that the lesser offenses merged into the greater offenses under the particular facts of these cases. The elements of the two crimes are the same.[1] The true test of whether one criminal offense has merged into another is not whether the two criminal acts are successive steps of the same transaction, but whether one crime necessarily involves the other. *Tender v. State,* 2 Md. App. 692, 237 A. 2d 65; *Chittum*

---

1. The same weapon, a sawed-off shootgun, was used in each offense. The victims are the same persons described in each offense, and there was identity of time, place and circumstances of each offense.

*v. State,* 1 Md. App. 205, 228 A. 2d 628; *Veney v. State,* 227 Md. 608, 613-14, 177 A. 2d 883 (1962); *Williams v. State,* 205 Md. 470, 109 A. 2d 89 (1954).

However, we further find that the fourth count of Indictment No. 2 does not merge into Indictments Nos. 3, 4, 5, and 6 where appellant was charged with assault with intent to murder. In count four, appellant was charged with the offense of carrying a dangerous and deadly weapon openly with intent to injure a person to the jurors unknown. Here, the jury found he was carrying the shotgun openly with intent to injure any person who might cross his path or interfere with the crime he planned to· commit. Under this count, the elements of carrying a deadly weapon openly with intent to injure and assault with intent to murder are not the same; one could be complete or occur without the other and therefore there was no merger. *Williams v. State, supra; Veney v. State, supra.*

> *As to Indictments 1, 3, 4, 5, and 6: Judgments affirmed.*
>
> *As to Indictment 2: Judgment affirmed as to Count No. 4. Judgment vacated as to Counts Nos. 3, 5, 6 and 7 as having merged in accordance with this opinion.*