## LORENZO DAVIS, JR., *v.* STATE OF MARYLAND

[No. 311, September Term, 1967.]

*Decided July 2, 1968.*

The cause was argued before MURPHY, C. J., and MORTON, ORTH, and THOMPSON, JJ.

*Morris Lee Kaplan,* with whom was *Michael Lee Kaplan* on the brief, for appellant.

*H. Edgar Lentz, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Donald Needle, Assistant Attorney General, Charles E. Moylan, Jr., State's Attorney for Baltimore City,* and *Edward J. Angeletti, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

PER CURIAM.

Lorenzo Davis, the appellant, was tried in the Criminal Court of Baltimore before Judge Joseph Carter and a jury under a series of indictments stemming from events which occurred on November 6, 1965. He was found guilty under the first and fifth counts of Indictment No. 5179 charging, respectively, armed robbery and assault upon Henry Naiditch. He was also found guilty as follows: Under the first count of Indictment No. 5180 charging armed robbery of Edward Zorn; under the second count of Indictment No. 5181 charging assault upon Francis Kuhn; under the first count of Indictment No. 5182 charging the carrying of a concealed weapon. Consecutive sentences, totaling 50 years, were imposed.

Naiditch, the owner of a grocery store in Baltimore City, testified that on November 6, 1965, at approximately 8:15 A.M., he and others who were present in his store at that time were robbed and assaulted by two armed men. Davis was armed with a sawed off shotgun, and his accomplice was armed with a pistol. A customer, Francis Kuhn, was hit in the head several times with the butt of the shotgun by Davis. Naiditch was similarly beaten; and the store was ransacked. Over $2,000 was taken from the cash register and the person of Naiditch, as was a pistol owned by him which was kept near the cash register. Davis was identified by Mr. Naiditch at the trial while seated among other persons in the courtroom although he did not identify him at a police lineup held several days after the robbery.

Francis Kuhn testified that he was hit in the head four or five times with the shotgun; that he received a fractured skull from the beating; and that Davis, seated among the spectators, was his assailant. Kuhn was unable to attend any lineup because of his injuries.

Edward Zorn, an employee of the Southern Fuel Company, testified that he was shoved and robbed by Davis. His wallet containing $113 and also his car keys were taken. Zorn identified Davis at the trial, and also had identified him at a police lineup held several days after the offense.

Mary F. Watty testified that as she was about to enter the Naiditch grocery store on the date in question, Davis and another man were leaving the premises. Davis was in the process of putting a shotgun underneath his coat at the time. She had previously known Davis and identified him both at the time of trial and at a police lineup. She stated that she also recognized Davis' accomplice, Bernard Jones,[1] and knew him by name. She immediately reported to the police the name of the accomplice, Jones, but stated that she did not, at that time, remember Davis' last name, although she did recall his first name. She admitted that she had at one time accused Jones of burglarizing her apartment. Davis denied any involvement with the crime and alleged that Mary Watty had a grudge against Jones. He presented three alibi witnesses.

On appeal he presents several contentions which are hereinafter set forth.

He first alleges that the state should have been required to elect which counts of the indictments it wanted to present to the jury where there was a merger of counts. Although he cites a number of cases none of them is appropriate to the facts of the present case. He specifically complains that the fifth count of Indictment No. 5179 merged with the first count because assault and battery was an essential element of robbery with a deadly weapon. In *Tender v. State,* 2 Md. App. 692 at 698, 237 A. 2d 65, this Court discussed the doctrine of merger in detail and found specifically that the offense of assault did not merge into the greater offense of robbery with a deadly weapon where

1. See *Jones v. State,* 3 Md. App. 608, 240 A. 2d 347.

there was sufficient evidence for the trial court to find that the assault was separate and distinct from the robbery. We think the facts of the present case indicate clearly that there was sufficient evidence for the trier of facts to find the assault on Henry Naiditch was separate and distinct from the assault with intent to rob.

Davis alleges error in the denial of his motion for a mistrial based on an allegation that the state had exercised its peremptory challenges in such a way as to strike members of the Negro race from the panel. The motion has no substance in fact. The transcript shows that the state struck four female members of the panel after Davis' challenges had been completely used up, and that these prospective jurors were replaced by males, two of whom were Negroes; and that at that point the state still had two unused challenges which were never used. The prosecuor explained that he was trying to remove female jurors from the panel.

Davis contends that his second motion for a mistrial should have been granted because the following occurred in the presence of the jury:

> "DEFENDANT: Is this the jury that is going to hear my case?
> "THE COURT: Yes.
> "DEFENDANT: Then [sic] must be going to hear his case, because ain't going to hear mine.
> "OFFICER: Take it easy.
> "DEFENDANT: Don't care what you say, what I said I meant.
> "THE COURT: Wait a minute, bring him back.
> "(Defendant walks out, brought back by officers)
> "THE CLERK: Lorenzo, take a seat over here next to your counsel.
> "THE COURT: Now, what is your problem? The jury has been sworn according to law to hear your case. You wanted a jury, you wanted a jury trial. The jurors were selected, and you helped select them, selected according to law. This is the jury that is going to hear your case.

"DEFENDANT: This is the jury that is going to hear my case?

"THE COURT: Yes.

"DEFENDANT: No, sir, they might hear it while I am asleep, but not here, not like I am now.

"THE COURT: They won't? You just remain standing there.

"DEFENDANT: Beg your pardon?

"THE COURT: I said remain standing until the jury is sworn.

"(Thereupon jury is sworn)

"THE CLERK: Be seated. Please be seated, Davis.

"MR. SHARRETTS: Sit down.

"DEFENDANT: I don't know what this here is, but it ain't mine, they must going to try this man's case, they ain't hearing my case.

"THE COURT: Davis, be seated.

"DEFENDANT: Look, I won't get in any trouble in your courtroom here.

"THE COURT: I don't want you to get in any trouble but I am telling you to sit down.

"DEFENDANT: How many going to sit me down.

"OFFICER: Sit on the bench and get yourself together.

"THE CLERK: Sit down, Davis. Come on, let's go.

"(Defendant sits down)"

Davis alleges that after this occurred it was impossible for the jury to give him a fair trial. He alleges no authority for the proposition that he can get a mistrial because of his own improper actions and we know of none. In addition, his defense counsel and the trial judge relayed to the jury Davis' apology for his actions and the trial judge specifically instructed the jury to base their verdict solely on the evidence and that his actions at the time set forth above were not to be considered against him. As we said in *Watts v. State,* 3 Md. App. 454, 240 A. 2d 317, as well as in several other cases, the matter of prejudice is peculiarly within the discretion of the trial judge be-

cause of his superior position to determine such a question. We see no error in the present case.

After the trial Davis made several post trial motions in proper person on grounds that are difficult to follow; but we will discuss them briefly. (a) He alleges that he was illegally arrested and subjected to an illegal search. No evidence was produced at the trial resulting from his arrest or search and, therefore, this ground does not entitle him to relief. *Nadolski v. State,* 1 Md. App. 304, 229 A. 2d 598. (b) He alleges that the testimony of Mary Watty was not to be believed. We have repeatedly ruled that the credibility of witnesses is a question for the trier of facts. *Lucas v. State,* 2 Md. App. 590, 235 A. 2d 780, *Crumb v. State,* 1 Md. App. 98, 227 A. 2d 369. (c) He alleges that the grand jurors were not picked from a cross-section of the City of Baltimore and that there was discrimination in the selection of the jury. There was no evidence whatsoever to support the allegation. *Grayson v. State,* 1 Md. App. 548, 232 A. 2d 284. (d) He alleges that he was denied a speedy trial because his motion for a new trial was not disposed of for a period of one year after the date of his trial. The right to a speedy trial does not apply to post trial proceedings. *Ash v. State,* 238 Md. 317, 208 A. 2d 691; *Brown v. State,* 2 Md. App. 388, 234 A. 2d 788. In addition, the record shows the delay was caused by various requests of Davis' counsel and Davis' request that a transcript of the trial be typed so that he could better argue his new trial motion.

Davis next objects because a question by the State's Attorney to a witness assumed a fact not in evidence. The question was not objected to and is therefore not properly before this Court, Maryland Rule 1085. After the answer to the question was given, counsel did inquire of the State's Attorney as to the truth of the fact and when the State's Attorney asserted its truth his objection was withdrawn.

Davis also contends that the evidence was not sufficient to support his convictions. The crimes were described by five eyewitnesses, four of whom positively identified him as one of the criminals. It is difficult to take this contention seriously, since it is utterly without merit.

*Judgments affirmed.*