## LORENZO DAVIS, JR. *v.* STATE OF MARYLAND

[No. 100, September Term, 1978.]

*Decided April 23, 1979.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, ELDRIDGE, ORTH and COLE, JJ.

*Thomas J. Saunders, Assistant Public Defender,* with whom were *Alan H. Murrell, Public Defender,* and *Jess G. Schiffmann, Assistant Public Defender,* on the brief, for appellant.

*Alice G. Pinderhughes, Assistant Attorney General,* with whom was *Stephen H. Sachs, Attorney General,* on the brief, for appellee.

ORTH, J., delivered the opinion of the Court.

This appeal revolves around a portion of the instructions given to the jury by the Criminal Court of Baltimore in the trial of Lorenzo Davis, Jr. thirteen years ago. The court advised the jury:

> If the jury considering all the evidence, inculpatory and exculpatory, entertain a reasonable doubt of the defendant's participation in the crime, they should acquit him. Thus a defendant is entitled to acquittal if the alibi testimony, taken into consideration with all the other evidence in the case, raises a reasonable doubt of guilt. But, in order to prove an alibi conclusively, the testimony must cover the whole time in which the crime by any possibility might have been committed and it should be rigid, it should be subjected to rigid scrutiny.[1]

Davis was convicted of two armed robberies, two assaults and the carrying of a concealed weapon. He is presently incarcerated under sentences imposed totalling fifty years.

On direct appeal, Davis attacked the judgments on some nine grounds, none of which went to the jury instruction. The Court of Special Appeals affirmed the judgments, and we

---

1. This is as set out in the agreed statement of facts in Davis' brief. The transcript of the proceedings at the trial, although admitted in evidence at the post conviction hearing which we now review, is not included in the record before us.

The agreed statement does not disclose whether objection to the instruction was made as required by Maryland Rule 756 f then in effect, which was the same in substance as present Rule 757 f. The judge presiding at the post conviction hearing did not expressly state in his memorandum opinion whether objection was made, but apparently thought that it was not. The Court of Special Appeals in its opinion delivered upon grant of Davis' application for leave to appeal stated flatly that the instruction was "not objected to at trial." Davis v. State, 40 Md. App. 467, 469, 391 A. 2d 872 (1978). The parties argue in their briefs as if no objection were made. We shall proceed on the assumption that there was no objection at trial to the instruction at issue here.

denied his petition for a writ of certiorari. *Davis v. State,* 4 Md. App. 492, 243 A. 2d 616 (1968), *cert. denied,* 252 Md. 730 (1969).

On 13 August 1969 Davis filed a petition seeking relief under the Uniform Post Conviction Procedure Act (the Act), Maryland Code (1957, 1976 Repl. Vol.) art. 27, §§ 645A-645J. *See* Maryland Rules BK 40 and BK 41. The petition was dismissed "without prejudice" on 25 November 1969 by order of the Criminal Court of Baltimore. On 19 October 1977 Davis filed another petition under the Act. As far as we can ascertain from the record before us, this petition contained the same allegations of error raised by the first petition. A hearing on the petition was held on 28 February 1978. The post conviction court denied relief and dismissed the petition by its order of 8 March 1978. The Court of Special Appeals granted Davis' application for leave to appeal, transferred the case to its regular docket, and, after considering briefs and oral argument, affirmed the judgment of the post conviction court. *Davis v. State,* 40 Md. App. 467, 391 A. 2d 872 (1978). We granted Davis' petition for a writ of certiorari.

There is no issue as to the impropriety of the instruction. The State concedes, as it must, that the alibi instruction was erroneous. *State v. Grady,* 276 Md. 178, 345 A. 2d 436 (1975) is dispositive. The alibi instruction given here was, as the post conviction judge pointed out, virtually identical with that which we found to be defective in *Grady.* Since the *Grady* instruction was erroneous, the instruction here was also erroneous. In the words of the post conviction judge, "[t]he question then is whether this erroneous instruction can be the basis for post conviction relief."

I

The Uniform Post Conviction Procedure Act established a comprehensive scheme providing a remedy for challenging collaterally the legality of incarceration under conviction of crime and sentence of death or imprisonment therefor. From the time of its original enactment by Acts 1958, ch. 44, the Act contained a proviso precluding relief if the error alleged

as the basis to set aside or correct the sentence had been "previously and finally litigated or waived in the proceedings resulting in the conviction, or in any other proceeding that the petitioner has taken to secure relief from his conviction." § 645A (a). Section 645H related to waiver of grounds for relief thus:

> All grounds for relief claimed by a petitioner under this Act must be raised in his original or amended petition, and any grounds not so raised are waived unless the court on hearing a subsequent petition finds grounds for relief asserted therein which could not reasonably have been raised in the original or amended petition.[2]

"Waiver" was not additionally defined, and "finally litigated" was not further discussed by statute or rule.

The Act was amended to adopt the definition of waiver espoused by *Fay v. Noia,* 372 U. S. 391, 83 S. Ct. 822 (1963). *See Bristow v. State,* 242 Md. 283, 289, 219 A. 2d 33 (1966). Acts 1965, ch. 442, § 1 repealed and re-enacted, with amendments, § 645A. Section 2 of ch. 442 repealed § 645H. New subsection (b) of § 645A prescribed when an allegation of error *shall* be deemed to be finally litigated. New subsection (c) set out when an allegation of error *shall* be deemed to have been waived. New subsection (d) declared when an allegation of error *shall not* be deemed to be finally litigated or waived.[3]

## II

In claiming that the erroneous instruction entitles him to a reversal of the judgments and the grant of a new trial, Davis

---

**2.** Maryland Rule BK48, adopted 15 September 1961, effective 1 January 1962, substantially conformed to this statutory language.

**3.** Maryland Rule BK48 was rewritten by amendment adopted 23 June 1967, effective 1 September 1967, because of the inconsistency between the former rule and the 1965 statutory standard which substituted a new principle of waiver. *See* Baldwin v. Warden, 243 Md. 326, 221 A. 2d 73 (1966). The amended rule contained in substance the provisions of new subsection (c).

argues the three questions presented in his petition for the issuance of a writ of certiorari.

(1)

Did the hearing judge err in denying [Davis] post conviction relief based on "new law", Art. 27, § 645A (d), regarding alibi defense?

Subsection (d) of the Act prescribes:

For the purposes of this subtitle ["Post Conviction Procedure"] and notwithstanding any other provision hereof, no allegation of error shall be deemed to have been finally litigated [4] or waived where, subsequent to any decision upon the merits thereof or subsequent to any proceeding in which said allegation otherwise may have been waived, any court whose decisions are binding upon the lower courts of this State holds that the Constitution of the United States or of Maryland imposes upon State criminal proceedings a procedural or substantive standard not theretofore recognized, which such standard is intended to be applied retrospectively and would thereby affect the validity of the petitioner's conviction or sentence.

Thus, at the heart of the question is whether there was a decision binding on the lower courts of this State which held, subsequent to Davis' trial, that the Constitution of the United States or of Maryland imposed upon this State's criminal proceedings a procedural or substantive standard as to the defense of alibi not therefore recognized so as to affect the

---

4. It is readily apparent that the "finally litigated" provisions of the Act do not come into play here. The necessary criteria prescribed by subsection (b) of the Act were not present. When Davis first presented the allegation that the alibi instruction was erroneous, neither this Court nor the Court of Special Appeals had rendered a decision on the merits thereof, either upon direct appeal or upon any consideration of an application for leave to appeal under post conviction procedures, nor had a court of original jurisdiction, after a fair and full hearing, rendered a decision on the merits thereof upon a petition for a writ of habeas corpus or a writ of error coram nobis.

validity of his convictions and sentences. *See State v. Evans,* 278 Md. 197, 211, 362 A. 2d 629 (1976).

The *Grady* instruction, which we held to be erroneous, had repeated, verbatim, language in *Floyd v. State,* 205 Md. 573, 581, 109 A. 2d 729 (1954).[5] We noted in *Floyd* that an alibi proceeds upon the idea that an accused was elsewhere at the time of the commission of the crime, and, thus, it "does, of course, if thoroughly established, preclude possibility of guilt." 205 Md. at 581. We cautioned that

> all the evidence in a criminal case is to be considered together, and the jury are not to weigh merely the evidence relating to the alibi and determine from that alone whether they have a reasonable doubt of guilt. To warrant a conviction in a criminal case the charge must be proved beyond a reasonable doubt. . . . If the jury, considering all the evidence, inculpatory and exculpatory, entertain a reasonable doubt of the defendant's participation in the crime, they should acquit him. Thus a defendant is entitled to acquittal if the alibi testimony, taken into consideration with all the other evidence in the case, raises a reasonable doubt of guilt. [*Id.* (citation omitted).]

Then we added:

> But in order to prove an alibi conclusively, the testimony must cover the whole time in which the crime by any possibility might have been committed, and it should be subjected to rigid scrutiny. [*Id.*]

*Grady* provided the first opportunity for us to examine *Floyd.* In the meantime the Supreme Court of the United States had decided *In re Winship,* 397 U. S. 358, 90 S. Ct. 1068 (1970) and *Mullaney v. Wilbur,* 421 U. S. 684, 95 S. Ct. 1881 (1975). *Winship* held that the Federal Constitution mandated

---

5. We took occasion in State v. Grady, 276 Md. 178, 345 A. 2d 436 (1975) to comment upon the use of excerpts from judicial opinions when instructing a jury. We warned "that it is not always appropriate to quote from appellate decisions in jury instructions since the language employed in a particular opinion may not adequately inform jurors of their responsibility." *Id.* at 186.

the principle that it is incumbent upon the State to prove a defendant's guilt, and to do so beyond a reasonable doubt. This principle, we observed in *Grady*, 276 Md. at 181-182, "is well-established by the many decisions of this Court," and "has long been in effect in Maryland." "In *Winship,* the Court concluded that the due process clause of the fourteenth amendment protects an accused in a state criminal cause against conviction except upon proof beyond a reasonable doubt of every element of the crime with which he is charged." *Grady* at 182. *See Winship* at 361-364. Five years later *Mullaney* elaborated upon the impact of *Winship* with regard to the burden of proof in homicide cases where the defendant claims he acted in the heat of passion. 421 U. S. at 704. We concluded that the teachings of *Winship* and *Mullaney*

> apply to the issue of who has the burden of proof and what that burden is when an accused relies on an alibi as a defense. In sum, under the Federal Constitution, as well as the law of Maryland, the burden is on the State to prove all elements of the alleged crime and to do so beyond a reasonable doubt; hence, the defendant does not have to establish his alibi, not even by a minimal standard of proof. "Evidence of alibi should come into a case like any other evidence and must be submitted to the jury for consideration of whether the evidence as a whole on the issue of presence proves the defendant's guilt beyond a reasonable doubt." *Smith v. Smith,* 454 F. 2d 572, 578 (5th Cir. 1971), *cert. denied,* 409 U. S. 885 (1972). [*Grady* at 182.]

Beyond question, the *Grady* alibi instruction, couched in the language of *Floyd,* was absolutely correct, both under the long established law of Maryland and the Federal Constitution, down to the last segment:

> But in order to prove an alibi conclusively, the testimony must cover the whole time in which the crime by any possibility might have been committed, and it should be subjected to rigid scrutiny.

We recognized in *Grady* that this segment had given rise to "some confusion . . . in a few of the trial courts of this State as to the burden of proof in criminal cases in which evidence of alibi is introduced. . . ." 276 Md. at 182-183. We observed: "Some trial courts and members of the bar seemingly have construed that segment to mean that the defendant had the burden of establishing his alibi, either by a preponderance of the evidence or conclusively." *Id.* at 183. But we carefully pointed out that this was "an erroneous interpretation since that part of *Floyd* merely refers to the fact that to be complete an alibi must cover the entire period of time in which the offense allegedly occurred." *Id.* at 183-184. We referred to a trilogy of cases, decided in 1974,[6] in which the Court of Special Appeals had read *Floyd* correctly while discussing the burden of proof in criminal causes in which alibi evidence was introduced. The intermediate appellate court suggested that an instruction in the language of *Floyd* "apparently stems from a tendency to believe that an 'alibi defense' is an 'affirmative defense' thus carrying the burden of proof. . . ." *Jackson v. State,* 22 Md. App. 257, 263, 322 A. 2d 574 (1974). The court declared flatly: "but it is not," *id.,* a position which had our unqualified agreement in *Grady.* We noted that "[o]ur view that it is incorrect to conceptualize an alibi as an affirmative defense with the burden of proving it resting on the accused is in accord with the decisions of the overwhelming majority of jurisdictions which have ruled on the issue." 276 Md. at 184-185 (footnote and citations omitted).

The *Floyd* language did not, in fact, comprise a departure from the law applicable to criminal causes in Maryland as it existed then or later in light of *Winship* and the interpretation of *Mullaney* by *State v. Evans, supra.* L. Hochheimer, The Law of Crimes and Criminal Procedure (2d ed. 1904) § 157 had laid it out clearly long ago:

> The burden rests upon the government of establishing by proof beyond a reasonable doubt

---

6. Daniels v. State, 24 Md. App. 1, 5-7, 329 A. 2d 712 (1974); Jackson v. State, 22 Md. App. 257, 260-264, 322 A. 2d 574 (1974); Robinson v. State, 20 Md. App. 450, 457-464, 316 A. 2d 268, *cert. denied,* 272 Md. 747 (1974).

every fact material to the guilt of the defendant, including every circumstance that enters into the grade or degree of the crime charged, and nothing is to be presumed or taken by implication against him. The law presumes every man innocent of crime. This presumption starts with the accusation and continues until the rendition of the verdict. Artificial presumptions and estoppels have no place in establishing guilt. . . .

In criminal cases, the burden of proof never shifts, but rests upon the government throughout, even tho a distinct, substantive defense is interposed by the accused by way either of justification or excuse of the matter charged. This principle finds apt illustration in the cases of the defense of *insanity* and that of an *alibi*. . . . If the accused sets up an alibi, or claim, that at the time of the commission of the alleged offense, he was in another place, he need not establish his defense by even a preponderance of proof. If the evidence touching it, even tho it does not cover the whole time during which the defendant, in order to have committed the crime, must have been present,[7] raises a reasonable doubt

---

7. This statement concerning the time covered appears to be carried over from the first edition (1897) of Hochheimer's work, § 278, where alibi is said to be an affirmative defense. In respect to the time covered, Hochheimer at that time plainly differs from Floyd v. State, 205 Md. 573, 581, 109 A. 2d 729 (1954). However, the reference to the time covered by an alibi does not appear in L. Hochheimer, A Manual of American Criminal Law (1911). Section 189 reads:

> The law presumes every man innocent of crime, and the burden rests upon the prosecution in each case to overcome this presumption.
>
> There are no presumptions as against the defendant in any criminal case: his guilt must be established by direct and substantive proof.
>
> Under the plea of not guilty every element of the crime is controverted, and the prosecution must affirmatively prove it, even tho it be matter of negative averment in the charge, proof of which is peculiarly within the knowledge of the defendant. The burden of proof *never shifts to the defendant*. It is immaterial in this regard, that he sets up a defense by way of justification or excuse in the nature of a confession and avoidance, as where he relies on the defense of insanity, or where he sets up an alibi, or claim that he was in another place when the alleged crime was committed. [Emphasis in original.]

of guilt, he must be acquitted. The evidence, as in all other cases, must be left to the jury entirely uninfluenced by instructions or comment tending to throw discredit upon the defense, and no legal significance attaches to a failure in its proof.

1 Wharton's Criminal Evidence (13th ed. Torcia, 1972) § 92 puts it concisely:

The assertion of an alibi does not affect any of the legal presumptions in favor of an accused person, nor does it relieve the state, at any stage of the prosecution, from affirmatively proving the guilt of the accused beyond a reasonable doubt.

A basic "legal presumption" in favor of an accused is the "presumption of innocence."

The principle that there is a presumption of innocence in favor of the accused is the undoubted law, axiomatic and elementary, and its enforcement lies at the foundation of the administration of our criminal law. [*Coffin v. United States,* 156 U. S. 432, 453, 15 S. Ct. 394 (1895).]

The Supreme Court has made plain that the concept of presumption of innocence is related to the cognate requirements that guilt may be found only on the basis of evidence and beyond a reasonable doubt. *Estelle v. Williams,* 425 U. S. 501, 503, 96 S. Ct. 1691 (1976). *See Taylor v. Kentucky,* 436 U. S. 478, 486, n. 13, 98 S. Ct. 1930 (1978). "[T]he Due Process Clause of the Fourteenth Amendment must be held to safeguard 'against dilution of the principle that guilt is to be established by probative evidence and beyond a reasonable doubt.' " *Taylor* at 485-486, quoting *Estelle* at 503. The burden of rebutting the "presumption" is on the State, and it may meet its burden by proving, beyond a reasonable doubt, the corpus delicti and the criminal agency of the accused as to the offense charged. Alibi evidence goes to criminal agency. *Grady,* at 184-185. *See Graham v. State of Maryland,* 454 F. Supp. 643 (D. Md. 1978).

The plain teachings of *Grady* are that *Floyd* cannot be

properly construed as making a change in the existing law and that *Winship* and *Mullaney* merely affirmed, from a federal constitutional view, what was the well-established law applicable in this State to alibi evidence. Further, it is clear that *Grady* itself, as the post conviction judge observed, "did not establish any new constitutional standard, but merely repeated what has always been the law regarding alibi evidence, namely, that the burden of proof lies upon the State for non-affirmative defenses." This is in accord with the statement of the Court of Special Appeals, that reliance on *Grady* to the contrary was misplaced. *Davis v. State,* 40 Md. App. at 469-470. Davis, testifying at his post conviction hearing, asserted that the rule placing the burden of proof on the prosecution with respect to the defense of alibi had "always been the law," even though "[t]hey just wasn't putting it into effect." He was correct.

That we found that the instruction in *Grady* compelled reversal is not contrary to the view that there was no change in the law within the contemplation of subsection (d). The instruction was erroneous, not because it failed to reflect a change in the law, but because

> one rational interpretation of the words used would place an impermissible burden of proof upon the respondent. [276 Md. at 185.]

We explained:

> The Achilles' heel of the instruction is that it could be understood as meaning that, while the State must prove its case against the accused beyond a reasonable doubt, the defendant has the responsibility of establishing his alibi, and apparently must even do so conclusively. Though, from the trial judge's words, the jury may have properly construed the respondent's obligation, we must assume that the improper inference was drawn because the latter portion of the instruction ... is misleading, ambiguous and confusing. [*Id.*]

We held:

> Since the defendant-respondent, as a matter of law, assumed *no* burden of persuasion with respect to his alibi evidence, the inference to the contrary in the instruction constitutes reversible error. [*Id.* at 185-186 (emphasis in original).]

The provisions of § 645A (d) are triggered when a standard is imposed on the State's trial courts which was "not theretofore recognized." Since no such standard was imposed here, the provisions of the subsection do not apply.

We hold that § 645A (d) provides no impediment to a finding that the erroneous instruction was waived.

(2)

> Assuming *arguendo,* that relief was properly denied under Art. 27, § 645A (d), was a new trial nevertheless required under the provisions of § 645A (c)?

The second question presented assumes that relief was properly denied under § 645A (d), but poses the claim that reversal of the judgments was nevertheless required under § 645A (c). Subsection (c) reads:

> For the purposes of this subtitle, an allegation of error shall be deemed to be waived when a petitioner could have made, but intelligently and knowingly failed to make, such allegation before trial, at trial, on direct appeal (whether or not said petitioner actually took such an appeal), in any habeas corpus or coram nobis proceeding actually instituted by said petitioner, in a prior petition under this subtitle, or in any other proceeding actually instituted by said petitioner, unless the failure to make such allegation shall be excused because of special circumstances. The burden of proving the existence of such special circumstances shall be upon the petitioner.
>
> When an allegation of error could have been made

> by a petitioner before trial, at trial, on direct appeal (whether or not said petitioner actually took such an appeal), in any habeas corpus or coram nobis proceeding actually instituted by said petitioner, in a prior petition under this subtitle, or in any other proceeding actually instituted by said petitioner, but was not in fact so made, there shall be a rebuttable presumption that said petitioner intelligently and knowingly failed to make such allegation.

*See* Md. Rule BK48.

The Court of Special Appeals relied on its *Curtis v. State,* 37 Md. App. 459, 381 A. 2d 1166 (1977) in holding that the erroneous instruction could be deemed to have been waived in the contemplation of subsection (c). In that case the court believed that the subsection established "a presumption of waiver from mere silence" and that the petitioner had to show "special circumstances" to rebut the statutory presumption. *Curtis,* 37 Md. App. at 468A-468C. *See Davis,* 40 Md. App. at 471. We reviewed *Curtis* by way of certiorari. *Curtis v. State,* 284 Md. 132, 395 A. 2d 464 (1968). We thought that this interpretation was manifestly erroneous. We summed up our construction of the subsection thus:

> In sum, with respect to those situations governed by the "waiver" standards of subsection (c), where the petitioner establishes that he did not in fact intelligently and knowingly fail to raise an issue previously, such issue cannot be deemed to have been waived. He need not, in addition, establish "special circumstances." It is only where the petitioner in fact intelligently and knowingly failed to raise an issue, or where he is unable to rebut the presumption of an intelligent and knowing failure, that he must show "special circumstances" in order to excuse his failure. [284 Md. at 140.]

We were careful to point out, however, that those principles may not govern every situation where there has been a failure to raise a matter previously. "The pertinent question," we said, "concerns the very scope or applicability of § 645A (c)

itself," as intended by the General Assembly. *Id.* at 141. We discussed the variable nature of "waiver," and, "[i]n view of the ambiguity associated with the term 'waiver,' we [did] not feel compelled by the language of § 645A to apply the 'intelligent and knowing' standard to all allegations made in post conviction actions," but only to those matters falling within the scope of subsection (c). *Id.* at 142. It was thus necessary that we determine what type of situations the Legislature intended to be encompassed by subsection (c). We ascertained that the Legislature

> intended that subsection (c), with its "intelligent and knowing" standard, be applicable only in those circumstances where the waiver concept of *Johnson v. Zerbst* and *Fay v. Noia* was applicable.[8] Other situations are beyond the scope of subsection (c) to be governed by case law or any pertinent statutes or rules. Tactical decisions, when made by an authorized competent attorney, as well as legitimate procedural requirements, will normally bind a criminal defendant. [284 Md. at 149-150.]

It is patent from our comprehensive discussion in *Curtis* leading to this determination of legislative intent, 284 Md. at 141-150, that the waiver concept of *Johnson v. Zerbst* and *Fay v. Noia* is not applicable to the advisory jury instruction here. That concept has been held to apply to the waiver of the Sixth Amendment right to counsel *(Johnson v. Zerbst, supra)*; the right to trial by jury *(Adams v. United States,* 317 U. S. 269, 63 S. Ct. 236 (1942)); a guilty plea *(Machibroda v. United States,* 368 U. S. 487, 82 S. Ct. 510 (1962)); the Fifth Amendment self-incrimination privilege *(Emspak v. United States,* 349 U. S. 190, 75 S. Ct. 687 (1955)); the double jeopardy clause *(Green v. United States,* 355 U. S. 184, 78 S. Ct. 221 (1957)). On the other hand, the "intelligent and knowing" standard has been held not to apply in considering the waiver,

---

8. The waiver concept of Johnson v. Zerbst, 304 U. S. 458, 58 S. Ct. 1019 (1938) and Fay v. Noia, 372 U. S. 391, 83 S. Ct. 822 (1963) is predicated upon the classic definition in Johnson v. Zerbst at 464 — "an intentional relinquishment or abandonment of a known right or privilege." Fay v. Noia at 439.

34

by a voluntary consent, of a search and seizure otherwise precluded by the Fourth Amendment (*Schneckloth v. Bustamonte,* 412 U. S. 218, 93 S. Ct. 2041 (1973)); of the constitutional right not to be tried in jail clothes (*Estelle v. Williams, supra*); of the unconstitutional discriminatory racial composition of a grand jury in a federal proceeding (*Davis v. United States,* 411 U. S. 233, 93 S. Ct. 1577 (1973)) and in a state proceeding (*Francis v. Henderson,* 425 U. S. 536, 96 S. Ct. 1708 (1976)). We cited cases reflecting that in many other circumstances, "it has been held that a criminal defendant may have been precluded from asserting a constitutional right because of prior action or inaction, despite the absence of a 'waiver' within the meaning of *Johnson v. Zerbst* and *Fay v. Noia.*" *Curtis,* 284 Md. at 147.

The jury instruction here falls within the category of those matters which are capable of being waived other than by the "intelligent and knowing" standard. Firm support for this view is found in *Hankersen v. North Carolina,* 432 U. S. 233, 97 S. Ct. 2339 (1977). In that case the Court determined that the Supreme Court of North Carolina erred in declining to hold retroactive the rule in *Mullaney v. Wilbur, supra.* In reaching this determination, it noted:

> Moreover, we are not persuaded that the impact on the administration of justice in those States that utilize the sort of burden-shifting presumption involved in this case will be as devastating as respondent asserts. If the validity of such burden-shifting presumptions were as well settled in the States that have them as respondent asserts, then it is unlikely that prior to *Mullaney* many defense lawyers made appropriate objections to jury instructions incorporating those presumptions. Petitioner made none here. The North Carolina Supreme Court passed on the validity of the instructions anyway. *The States, if they wish, may be able to insulate past convictions by enforcing the normal and valid rule that failure to object to a jury instruction is a waiver of any claim of error.* [432 U. S. at 244, n. 8. (Emphasis added).]

The short of it is that we found in *Curtis* on the authorities therein referred to, that "it [was] clear that a 'procedural default' in certain circumstances, even where a defendant may personally have been without knowledge or understanding of the matter, may result in his being precluded from asserting important rights. . . . A defendant may forego a broad spectrum of rights which are deemed to fall within the category of tactical decisions by counsel or involve procedural defaults." 284 Md. at 147. The right to a correct jury instruction in the circumstances of the instant case falls within the category involving procedural defaults. Thus, the waiver concept of *Johnson v. Zerbst* and *Fay v. Noia* was not applicable, and, therefore, the provisions of subsection (c) were not applicable. The answer to question two is that a new trial was not required under the provisions of § 645A (c) of the Act.

### (3)

If in fact, the law on alibi instructions was well established, did the failure of [Davis'] counsel to be aware of the instruction deprive him of the effective assistance of counsel?

As presented in Davis' petition under the Act and as argued in his brief filed in this Court, the claim that Davis was denied the effective assistance of counsel goes only to his trial counsel.[9] The basis of the claim is that his trial counsel made no objection to the erroneous instruction. At the post conviction hearing Davis testified that he had raised the defense of alibi at his trial. He stated that the jury instruction had placed an improper burden on him. He was asked how he knew that and replied: "Because . . . *Mullaney* . . . says that the burden of proof is not on the defendant, it's on the State. And they made me prove where I was at which they was supposed to prove. The proof was supposed to lie upon them." He declared: "As far as the jury is concerned, the instructions to the jury, [trial counsel] was supposed to know this because

---

9. Davis was represented by three different lawyers, one at trial, another on direct appeal and another during the post conviction proceedings.

he is a lawyer, I'm not. At the time, I was completely ignorant."It was pointed out to him that *Mullaney* and *Evans* had been decided subsequent to his trial. It was suggested to him that the doctrine coming out of the holdings of those cases "was not the law when he was tried." He was asked: "But you still feel [trial counsel] should have known about it?" He replied, as we have indicated: "Well, it's always been the law. They just wasn't putting it into effect."

The issue whether Davis was denied the effective assistance of counsel by the failure of trial counsel to object to the erroneous instruction was squarely before the post conviction court, and properly so, for competency of counsel may be raised for the first time under post conviction procedures. *State v. Zimmerman,* 261 Md. 11, 24-25, 273 A. 2d 156 (1971). The criminal court and appellate court records regarding the indictments under which Davis was tried, and the transcript of the trial were admitted in evidence. The point was not further pursued. No other evidence was adduced. Trial counsel was not called to testify even though the appellate courts of this State have recognized that, ordinarily, counsel, whose professional ability and integrity are impugned, should be afforded an opportunity to be heard. *Williams v. State,* 10 Md. App. 570, 578, 271 A. 2d 777 (1970), *cert. denied,* 261 Md. 730 (1971); *Thompson v. State,* 6 Md. App. 50, 55-56, 250 A. 2d 304 (1968), *cert. denied,* 255 Md. 744 (1969); *Turner v. State,* 5 Md. App. 584, 586-587, 248 A. 2d 801 (1968), *cert. denied,* 253 Md. 735 (1969). *See State v. Zimmerman,* 261 Md. at 24-25, quoting with approval *Harris v. State,* 2 Md. App. 408, 409, 234 A. 2d 781 (1967). Furthermore, the memorandum opinion of the post conviction judge accompanying the order of the court did not dispose of the issue as required by Md. Rule BK45 b.[10] We have consistently held that this Rule requires the hearing court to

---

10. Md. Rule BK45 b prescribes:

The order shall include or be accompanied by a memorandum signed by the judge setting forth separately each ground upon which the petition is based, the federal and state rights involved, the court's ruling with respect to each ground, and the reasons for the action taken thereon.

make findings of fact as to every claim in post conviction cases, and when this was not done, the case was remanded for further inquiry and decision. *See, for example, Washington v. Warden,* 243 Md. 316, 320, 220 A. 2d 607 (1966); *Farrell v. Warden,* 241 Md. 46, 49, 215 A. 2d 218 (1965); *Branson v. Warden,* 239 Md. 15, 16-17, 209 A. 2d 784 (1965); *Duff v. Warden,* 234 Md. 646, 648, 200 A. 2d 78 (1964); *Daniels v. Warden,* 222 Md. 606, 607, 158 A. 2d 763 (1960); *Ellinger v. Warden,* 221 Md. 628, 630, 157 A. 2d 616 (1960). The post conviction judge did not rule on the issue raised by the failure of trial counsel to object to the erroneous instruction, made no findings of fact thereon and did not address the point in his memorandum accompanying the order.

The Court of Special Appeals considered the competency of counsel issue and decided that Davis had not been denied the effective assistance of counsel. It did so without reference to Rule BK45 b and our decisions regarding that Rule.[11] Our actions in prior cases involving comparable circumstances clearly indicate that this case should be remanded to the post conviction court for further inquiry and factual findings on the issue.

### III

The Court of Special Appeals was correct in its judgment affirming the order of the Criminal Court of Baltimore of 8 March 1978 with respect to question one relating to § 645A (d) of the Act and with respect to question two relating to § 645A (c), albeit for the wrong reasons as to the latter. We affirm the judgment of the intermediate appellate court in regard to those two issues.

We vacate the judgment of the Court of Special Appeals with respect to question three concerning the effective

---

11. The Court of Special Appeals commented in a footnote:

It should be noted that there is no evidence before us pertaining to the "awareness" of appellant's attorney; his decision not to object could have been based on tactical considerations. If this were the case, no relief would be available as it is well established that mere tactical errors are "not sufficient to constitute incompetency of counsel." Hall v. Warden, 224 Md. 662, 665 (1961). [Davis v. State, 40 Md. App. 467, 471, n. 4, 391 A. 2d 872 (1978).]

38

assistance of counsel with direction that it remand the case to the Criminal Court of Baltimore for further inquiry, factual findings and a ruling with respect to question three and the issuance of an order, accompanied by an appropriate memorandum pursuant to Rule BK45 b.

> *Judgment of the Court of Special Appeals affirmed in part and vacated in part and case remanded to that court with direction to remand to the Criminal Court of Baltimore for further proceedings, all in accordance with this opinion. Costs to be paid by the Mayor and City Council of Baltimore.*