Walter H. GUTHRIE # 117801

v.

WARDEN, MARYLAND
PENITENTIARY.

Civ. No. K–78–852.

United States District Court,
D. Maryland.

June 29, 1981.

Benson E. Legg, Baltimore, Md., for
plaintiff.

Stephen H. Sachs, Atty. Gen. of Md., and
Stephen N. Rosenbaum, Asst. Atty. Gen.,
Baltimore, Md., for defendant.

FRANK A. KAUFMAN, Chief Judge.

This case involves issues which are posed
by the Supreme Court's opinions in *Sand-
strom v. Montana*, 442 U.S. 510, 99 S.Ct.
2450, 61 L.Ed.2d 39 (1979); *Mullaney v.
Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44
L.Ed.2d 508 (1975); and *In re Winship*, 397
U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368
(1970) relating to burden of proof and, in
connection therewith, presumptions and the
shifting of burden.[1] Those opinions have
retroactive effect, as made clear in *Hanker-
son v. North Carolina*, 432 U.S. 233, 97 S.Ct.
2339, 53 L.Ed.2d 306 (1977), holding *Mulla-
ney* retroactive and *Ivan V. v. City of New*

1. The question presented in *Patterson v. New
York*, 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d
281 (1977), in which Justice White's majority
opinion distinguished certain affirmative de-
fenses from core elements of crimes, is not
involved in the within case.

*York,* 407 U.S. 203, 92 S.Ct. 1951, 32 L.Ed.2d 659 (1972), holding *Winship* retroactive. The doctrine of *Sandstrom* would appear to have been anticipated by Maryland's highest court, the Court of Appeals, in *State v. Evans,* 278 Md. 197, 362 A.2d 629 (1976).

Having exhausted his available state remedies, Guthrie seeks federal habeas corpus relief for the first time in connection with his conviction for murder in the first degree after a jury trial on June 7–9, 1971 in the Circuit Court for Garrett County, Maryland, Judge Hamill presiding. Guthrie was charged with first degree murder, second degree murder and manslaughter, and unsuccessfully interposed pleas of not guilty and not guilty by reason of insanity. Guthrie was subsequently sentenced to a life term by Judge Hamill.

During the trial Guthrie testified in his own defense that on October 13, 1970, the day of the alleged offense, after quitting his job in Baltimore, he hitchhiked from Baltimore to north of Cumberland, riding in three different cars with three different drivers. The last ride was in the car driven by the victim, Aul. Guthrie testified that he and Aul had a few drinks of liquor and beer en route and that thereafter Aul, who was driving, laid his hand on Guthrie's leg, that Guthrie told him that he "did not play that kind of stuff," but that nevertheless, a few minutes later, Aul "started again." Guthrie testified that he again told Aul to cease and that, subsequently, he (Guthrie) tried to get his bags out of the car, but that when he (Guthrie) did so, Aul reached under the seat, came up with a small caliber revolver, and told Guthrie that he (Aul) would kill Guthrie if Guthrie tried to leave. Guthrie testified that he thought that the gun was real and that Aul would do as he had said, that he (Guthrie) got his pocketknife out of his pocket and that when Aul got out of the car, Guthrie knocked Aul's gun to the side, at which time Aul fired two shots and he (Guthrie) "us[ed] the knife on Mr. Aul's

stomach." Guthrie testified that he "remembered nothing more." [2] Guthrie was arrested four days later, on October 17, 1970, in Nevada driving Aul's car.[3]

### *The Jury Instructions*

Judge Hamill's jury instructions cover some 23 pages of transcript. In those instructions, Judge Hamill began by stating that the "burden of proof is upon the State to prove a criminal case beyond a reasonable doubt." [4] As to Guthrie's plea of not guilty by reason of insanity, Judge Hamill informed the jury as follows: [5]

The law in this State is that every person is presumed to be sane until the contrary is established. Where the issue of insanity is raised as a defense in a criminal case, the State is not required to prove the defendant sane, unless substantial evidence of insanity has been produced by the defense; then sanity, like any other fact material to the question of guilt, must be proved by the State beyond reasonable doubt. If you believe and find that the defense has produced substantial evidence of insanity on the part of the defendant at the time of the commission of the alleged offense, then in order for you to find him sane, you must believe and find that the State has proved him sane beyond reasonable doubt.

With regard to the defense of drunkenness, the Court instructed the jury as follows: [6]

Now, the defendant in this case has interposed drunkenness as a defense, and I am now going to read you the law with regard to drunkenness: The court instructs the jury that voluntary drunkenness is not a defense to crime, although whenever the actual existence of any particular motive, purpose or intent is a necessary element to constitute any particular species or degree of crime, the trier of facts, that's the jury, may take into con-

---

2. Trial Transcript (hereinafter Tr.) 355–69.

3. Tr. 372.

4. Tr. 420.

5. Tr. 424–25.

6. Tr. 427.

sideration the fact that the accused was intoxicated at the time in determining the purpose, motive or intent with which he committed the act.

And further along that line: The accused must do more than simply raise the issue of drunkenness to establish a defense. He must persuade the triers of fact, that is the jury, that under the circumstances, he was so intoxicated as to be incapable of entertaining the specific intent or of possessing the mental state which is an essential element of the crime for which he is being prosecuted. To establish a valid defense, the defendant must show that he was so intoxicated that he was robbed of his mental faculties and he will be considered criminally responsible as long as he retains control of his mental faculties sufficient to appreciate what he is doing.

The Court also gave the following self-defense instruction: [7]

To put it another way, you are instructed that it is the law that when a person believes that he is in imminent danger of suffering serious bodily injury, or death, at the hands of another, that person may defend himself to the extent of killing the other; you are further instructed that it is for you to determine whether a reasonable and prudent person, similarly situated, would have believed that he or she was in imminent danger of suffering serious bodily injury, or death, at the hands of another. If you find that the defendant in this case had reasonable ground to believe, and did in fact believe, that he was in imminent danger of suffering serious injury, or death, at the hands of the deceased at the time he killed him; and if you further find that any reasonable and prudent person similarly situated, with all the attending circumstances, would have believed that he was in imminent danger of suffering serious bodily injury, or death, at the hands of the deceased, then the defendant would be entitled to be acquitted.

Thereafter, the Court repeated several times that the State must prove guilt beyond a reasonable doubt.[8] After briefly listing the five possible verdicts the jury might reach, the Court instructed the jury as follows: [9]

In this connection [*i. e.*, the five possible verdicts], you are instructed that *murder is defined as the unlawful killing of a human being with malice aforethought. Malice is defined as the intentional doing of a wrongful act to another without legal excuse or justification. It includes any wrongful act done willfully or purposely and may be inferred when there is intent to inflict great bodily harm* or when one willfully does an act the natural tendency of which is to cause death or great bodily harm. *The law presumes all unlawful and felonious homicides to be committed with malice aforethought* and to constitute murder. Under this presumption, if it is established that a killing was done with *willful intent* to kill or to inflict great bodily harm without legal excuse or justification, then *malice would be established* and the law would presume the offense to constitute murder. The law further presumes that all murder is murder in the second degree.

The burden is upon the State in the first instance to prove that the murder was done willfully and with intent to kill or inflict great bodily harm. If you find that the State has met that burden in this case, then the law would presume it to be murder in the second degree, unless you further find that the State has met the additional burden of raising it to first degree murder by proving all of the elements that are necessary to constitute first degree murder; and *the burden is on the accused to reduce the presumption of second degree murder to manslaughter.*

*In order for the State to elevate the presumption of second degree murder to first degree murder, you must find that*

---

**7.** Tr. 429–30.

**8.** Tr. 430–31.

**9.** Tr. 431–36, 50–55.

the State has proved beyond reasonable doubt that the murder was *willful, deliberate and premeditated* or committed in the perpetration of or attempt to perpetrate a robbery. *It must be willful, deliberate and premeditated.* Those are the elements required for first degree murder.

In defining the above terminology, the Court of Appeals has said that to be willful there must be a specific purpose and design to kill or to inflict great bodily harm. To be deliberate there must have been a full and conscious knowledge of the purpose to kill or inflict great bodily harm. To be premeditated the design to kill must have preceded the killing by an appreciable length of time; that is, time enough to deliberate. It is not necessary that deliberation or premeditation shall have been conceived or shall have existed for any particular length of time before the killing. If, therefore, the killing is not the instant effect of impulse, and *if there is hesitation or doubt to be overcome, and a choice to be made as a result of thought, however short*, the determination between the intention and the act is sufficient to characterize the crime as deliberate and premeditated murder in the first degree.

If you find that the State has proved these aforementioned elements beyond reasonable doubt; that is, the actual intent to kill or inflict great bodily harm, the fully formed purpose to kill or inflict great bodily harm, with sufficient time for deliberation and premeditation, *and you are convinced beyond reasonable doubt that this act was not the act or immediate offspring of rashness and impetuous temper, but that the mind had become fully conscious of its own design*, then you would find the accused guilty of murder in the first degree.

We have just explained what is required on the part of the State to raise the legal presumption of second degree murder to first degree murder. Now, we are going to instruct you as to *what is required on the part of the defendant to reduce the legal presumption of second degree murder to manslaughter.* In order for the accused to reduce the presumption of second degree murder to manslaughter, it would be necessary that *he establish* from the evidence in the case to the satisfaction of the jury, that the killing was done *in the heat of passion* which had temporarily dethroned him of his reason, and which was induced by adequate provocation. In other words, the killing was done under such circumstances that his passion was provoked to the extent that he was devoid of his reason. By that we mean such provocation as would cause a reasonable person standing in the position of the accused to become so impassioned as to lose control of his reason.

If you find under the circumstances and evidence in this case that a reasonable person standing in the shoes of the accused would have become so enraged as to lose control of his reason, then the alleged killing would be deemed to have been provoked by sufficient provocation. Under those circumstances, there would be no malice and the crime would be, if there was no legal excuse or justification, reduced to manslaughter because there would be an absence of malice or intent to kill or inflict great bodily harm. Even if you find the alleged killing was done in a reckless disregard of human life, in the absence of intent to kill or to inflict great bodily harm, then you would find a verdict of manslaughter rather than murder.

*The burden of showing that he lost control of his reason because of sufficient provocation, or that there was no intent on his part to kill or inflict great bodily harm, thus reducing the presumption of second degree murder to manslaughter, is upon the accused.*

In this regard, the Court instructs you that *a person who uses a deadly weapon such as a knife directed at the vital parts of the body of another person is presumed in law to intend the natural and probable consequences of that act*, until a contrary intent is established by evidence which the jury considers sufficient.

As to the defendant's plea of not guilty, we have stated before, the burden of proving the accused guilty of a crime is upon the State at all times to establish beyond reasonable doubt every material fact required for his guilt, and if you feel that this burden of proof has not been met by the State, then your verdict should be not guilty. If the jury, in considering the evidence in this case, would fail to find that sufficient facts have been established beyond a reasonable doubt to constitute any one of these three degrees of unlawful homicide; that is, murder in the first degree, murder in the second degree or manslaughter, then the State would have failed to prove its case that the accused has committed unlawful homicide, and under those circumstances the verdict of the jury should be not guilty.

(Emphases added). At the end of its instructions, the Court once again repeated that the State had to prove the accused guilty beyond a reasonable doubt.[10] Guthrie contends that many parts of the instructions are erroneous and entitle him to the federal habeas corpus relief he seeks herein.

### Procedural Bars

Guthrie did not file a direct appeal after his conviction and sentencing. However, Guthrie later sought relief under Maryland's Post Conviction Procedure Act, contending that Judge Hamill's jury instructions violated the principles of *Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975), and *State v. Evans*, 278 Md. 197, 362 A.2d 629 (1976), both rendered after Guthrie's conviction. An evidentiary hearing in that post-conviction proceeding was held on May 20, 1977 by Judge Getty, sitting in the Circuit Court for Garrett County. Therein, the State defended solely on the ground that the trial court's jury instructions were not erroneous. The State did not raise any alleged failure by Guthrie

timely to object during trial to any part of the trial judge's instructions. In denying post-conviction relief,[11] Judge Getty did not refer to the fact that Guthrie had not earlier objected to the jury instructions. On review, the Court of Special Appeals, in denying Guthrie leave to appeal,[12] concluded that the trial court, in its jury instructions, had erred in placing the burden of proof on defendant to reduce the presumption of second degree murder to manslaughter, and had also erred by instructing the jury that intent is presumed from the fact that a person directs a deadly weapon at the vital parts of another's body, but held that those errors did not, viewed in the totality of the instructions, entitle Guthrie to relief. At no point did the Court of Special Appeals allude to any failure by Guthrie timely to object.

■ Herein the State does not contend that Guthrie's failure to appeal his conviction in state court should bar this Court from reaching the merits of Guthrie's federal habeas corpus claims. Nor does the State contend, except in one brief, unsupported sentence in its original answer to Guthrie's petition[13]—and that contention then stated was subsequently withdrawn during oral argument in this Court[14]—that Guthrie's failure to object to the challenged instructions in state court should prevent this Court from reaching the merits. However, in any event, those positions, even if urged by the State, may not prevail.

*Mullaney* and *Evans* were decided after Guthrie's judgment of conviction became final. Md.Ann.Code art. 27, § 645A(d) provides:

For the purposes of this subtitle and notwithstanding any other provision hereof, no allegation of error shall be deemed to have been finally litigated or waived where, subsequent to any decision upon the merits thereof or subsequent to any proceeding in which said allegation

---

10. Tr. 441–42.

11. Opinion filed July 27, 1977.

12. No. 125, Ct.Spec.App. (September 21, 1977).

13. Filed July 20, 1978.

14. On January 16, 1981.

otherwise may have been waived, any court whose decisions are binding upon the lower courts of this State holds that the Constitution of the United States or of Maryland imposes upon State criminal proceedings a procedural or substantive standard not theretofore recognized, which such standard is intended to be applied retrospectively and would thereby affect the validity of the petitioner's conviction or sentence.

In *County Court of Ulster County v. Allen,* 442 U.S. 140, 147–54, 99 S.Ct. 2213, 2219–2223, 60 L.Ed.2d 777 (1979), Justice Stevens wrote:

This is the sixth time that respondents have asked a court to hold that it is unconstitutional for the State to rely on the presumption because the evidence is otherwise insufficient to convict them. No court has refused to hear the claim or suggested that it was improperly presented. Nevertheless, because respondents made it for the first time only after the jury had announced its verdict, and because the state courts were less than explicit in their reasons for rejecting it, the question arises whether the New York courts did so on the basis of an independent and adequate state procedural ground that bars the federal courts from addressing the issue on habeas corpus. * * * We conclude that there is no support in either the law of New York or the history of this litigation for an inference that the New York courts decided respondents' constitutional claim on a procedural ground, and that the question of the presumption's constitutionality is therefore properly before us. * * *

* * * [E]ven if New York's contemporaneous-objection rule did generally bar the type of post-verdict insufficiency claim that respondents made, there are at least two judicially created exceptions to that rule that might nonetheless apply in this case.

The conclusion that the New York courts did not rely on a state procedural ground in rejecting respondents' constitutional claim is supported * * * by three aspects of this record. First, the prosecu-

tion never argued to any state court that a procedural default had occurred. This omission surely suggests that the New York courts were not thinking in procedural terms when they decided the issue. * * *

Second, the trial court ruled on the merits when it denied respondents' motion to set aside the verdict. * * *

Third, it is apparent on careful examination that the New York Court of Appeals did not ignore respondents' constitutional claim in its opinion. Instead, it summarily rejected the claim on its merits. * * *

Our conclusion that it was proper for the federal courts to address respondents' claim is confirmed by the policies informing the "adequate state ground" exception to habeas corpus jurisdiction. The purpose of that exception is to accord appropriate respect to the sovereignty of the States in our federal system. * * * *But if neither the state legislature nor the state courts indicate that a federal constitutional claim is barred by some state procedural rule, a federal court implies no disrespect for the State by entertaining the claim.*

(Emphasis supplied; citations and footnotes omitted).

In *Moran v. Estelle,* 607 F.2d 1140, 1143 (5th Cir. 1979), the Fifth Circuit, relying in part upon *Allen,* reasoned:

The circumstances in the instant case are strikingly similar to those in *Allen.* First, not only did the prosecutor fail to request that the state courts decide the case on the basis of the contemporaneous objection rule, he specifically stated that the failure to object was immaterial and requested that the trial court reach the merits. * * * Second, there is no doubt that the state trial court decided the merits of appellant's constitutional argument without even mentioning his failure to object at trial. * * * Third, since the trial court's decision was on the merits only, the logical interpretation of the unexplained affirmance by the Court of

Criminal Appeals is that it also was on the merits. Fourth, as in *Allen*, the appellate court in this case had, on several occasions, decided the precise issue presented to it by *Moran*. Thus, it is logical to assume that a written opinion was not deemed necessary. At the very least, it would strain logic to assume that an affirmance without written opinion was meant to dispose of the case on the basis of an argument never offered or passed on by the trial court. * * *

(Citations to the record omitted).

In *Hankerson v. North Carolina*, 432 U.S. 233, 244 n.8, 97 S.Ct. 2339, 2345, 53 L.Ed.2d 306 (1977), Justice White wrote: "The States, if they wish, may be able to insulate [*Mullaney* burden-shifting errors in] past convictions by enforcing the normal and valid rule that failure to object to a jury instruction is a waiver of any claim of error." In *Cole v. Stevenson*, 620 F.2d 1055 (4th Cir.), *cert. denied*, 449 U.S. 1004, 101 S.Ct. 545, 66 L.Ed.2d 301 (1980), Judge Widener relied on that footnote in denying federal habeas corpus relief in a case in which the petitioner had failed to object contemporaneously to instructions during his North Carolina trial. Unlike Maryland, North Carolina lacks a provision analagous to section 645A(d), and seemingly does operate within the above-referred-to context suggested by Justice White in *Hankerson*.

In *Robertson v. Warden*, 466 F.Supp. 262 (D.Md.1969), *aff'd without published op.*, 624 F.2d 1095 (4th Cir.), *cert. denied*, 449 U.S. 961, 101 S.Ct. 376, 66 L.Ed.2d 229 (1980), Judge Young concluded that petitioner had not waived his right to seek federal habeas corpus relief because of an erroneous alibi instruction, by failing to object at trial or on direct appeal. Judge

Young, citing to the Maryland statutory provisions set forth in section 645A(d), concluded that Robertson "could not have fully appreciated the significance of *Winship*, nor, obviously, could he have anticipated either *Mullaney* or *Henderson* which made *Mullaney* fully retroactive" (at 266; footnote omitted).[15]

In *Davis v. State*, 285 Md. 19, 400 A.2d 406 (1979), Judge Orth, writing for Maryland's highest court, stated that *Mullaney* and its progeny had not changed Maryland law with respect to alibi defenses, and that Maryland had always put the burden of proof of overcoming an alibi defense on the State although trial courts had often misapplied that rule. Accordingly, Judge Orth held that section 645A(d) was not available to preserve a claim of an erroneous alibi defense, since section 645A(d) requires that the procedural standard be "not theretofore recognized." In the within case, no alibi defense or alibi jury instruction is involved. Accordingly, *Davis* is not applicable herein. Nor seemingly is there any reason why section 645A(d) is not applicable. There is nothing in the post-conviction opinions of Judge Getty or of the Court of Special Appeals which suggest otherwise. Further, as partially mentioned *supra*,[16] during oral argument in this case, the State conceded that *Robertson* did not pose a bar to relief herein and did not argue that *Davis* was applicable. Indeed, Chief Judge Murphy's application of section 645A(d) in *State v. Evans, supra*, 278 Md. at 211, 362 A.2d 629 which itself was a case in which there was "evidence from which the jury could have concluded that Evans stabbed Counts [the victim] in self-defense or in hot blood" (*Evans, supra* at 199, 362 A.2d 629), is seemingly fully controlling in this case in which the

**15.** In *Robertson*, Judge Young denied relief because of the failure of Robertson to meet the standards of *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594, *reh. denied*, 434 U.S. 880, 98 S.Ct. 241, 54 L.Ed.2d 163 (1977) (all of Judge Young's views as set forth in *Robertson* may not be fully in accord with all of the principles enunciated in *Cole v. Stevenson, supra*). *Wainwright* holds that failure of a defendant to satisfy a state's contemporaneous obligation rule will subsequently bar federal

habeas corpus relief unless *Wainwright's* "cause" and "prejudice" standards are met. When there is no contemporaneous objection rule, *Wainwright* does not bar federal habeas corpus relief. *See County Court of Ulster County v. Allen, supra*, 442 U.S. at p. 154, 99 S.Ct. 2223; *see also Baker v. Muncy*, 619 F.2d 327 (4th Cir. 1980).

**16.** See p. 550 and n.14 *supra*.

evidence provides a basis for a hot blood defense. Accordingly, the merit issues must be reached herein.

### Merits

 Maryland law provides that "[a]ll murder which shall be perpetrated by means of poison, or lying in wait, or by any kind of wilful, deliberate and premeditated killing shall be murder in the first degree." Md.Ann.Code art. 27, § 407. "All other kinds of murder shall be deemed murder in the second degree." Md.Ann.Code art. 27, § 411. Judge Hamill, after explaining to the jury the elements of second degree murder, adequately stated how the State could elevate the presumption of second degree murder to first degree. In so doing, he instructed the jury that first degree murder requires proof beyond a reasonable doubt of premeditation and that premeditation exists if "the killing is not the instant effect of impulse, and if there is hesitation or doubt to be overcome, and a choice to be made as a result of thought, however short * * *." In other words, he instructed the jurors that premeditation requires some, albeit brief, thought before the act. While Judge Hamill's instructions did not specifically distinguish between premeditation and malice aforethought, and did not define malice aforethought with maximum clarity, his instructions made it sufficiently clear that premeditation and malice aforethought are not synonymous.

Those words require careful use. Webster's Third New International Dictionary (1967) defines aforethought, at p. 37, as "premeditation: previously in mind: deliberate—usu. used postpositively (with malice [aforethought])" and further, "premeditation, deliberation (doing nothing without [aforethought].) Premeditation is defined (at p. 1789) as "characterized by fully conscious willful intent and a measure of *forethought* and planning" (emphasis added). See *Gagne v. Meachum*, 460 F.Supp. 1213, 1220 (D.Mass.1978), *aff'd*, 602 F.2d 471 (1st Cir.), *cert. denied*, 444 U.S. 992, 100 S.Ct. 524, 62 L.Ed.2d 422 (1979), in which the Court wrote:

Any confusion which the jury might have had when the judge discussed the inference of malice should have been dissipated by the judge's later instructions. For example, the judge, in discussing murder in the first degree, told the jury:

> In order to establish murder in the first degree under this particular section of the statute, *it is not only necessary for the Commonwealth to prove that the killing was done with malice aforethought*, but it must also appear that the act was deliberately premeditated.

Tr. at 784–785 (emphasis added by the *Gagne* Court). The judge later said:

> ... if there isn't any deliberate premeditation, *but there is malice aforethought that's been proved beyond a reasonable doubt*, then you have murder in the second degree.

Tr. at 792 (emphasis added by the *Gagne* Court).

The Supreme Court has suggested that the distinction between malice aforethought and premeditation under some circumstances may be important. Thus, in *Patterson v. New York*, 432 U.S. 197, 215, 97 S.Ct. 2319, 2329, 53 L.Ed.2d 281 (1977), Justice White noted that in *Mullaney*, "[T]he Maine Supreme Judicial Court made it clear that malice aforethought, which was mentioned in the statutory definition of the crime, was not equivalent to premeditation and that the presumption of malice traditionally arising in intentional homicide cases carried no factual meaning insofar as premeditation was concerned."

In *State v. Ward*, 284 Md. 189, 199, 396 A.2d 1041 (1978), Judge Orth distinguished malice aforethought from premeditation, stating: "The felonious homicide would be with malice aforethought but not willful, deliberate and premeditated." Other legal writers, however, have failed to make the distinction. *See, e. g.*, Bouvier's Law Dictionary 161 (8th Ed. 1914), which not only defines aforethought as "premeditated; prepense," but also contains language almost identical to Judge Hamill's definition of premeditation: "the length of time dur-

ing which the accused has entertained the thought of committing the offence is not very material, provided he has in fact entertained such thought; he is thereby rendered criminal in a greater degree than if he had committed the offence without premeditation. See Malice Aforethought; Premeditation [citations omitted]."

There is a real danger that a juror who melds, in his own mind, premeditation and malice aforethought, and who is told that he should presume malice aforethought from the commission of an unlawful killing, could conclude that the requirement of premeditation is satisfied if the defendant acted with malice aforethought. In *Evans v. State*, 28 Md.App. 640, 695, 349 A.2d 300 (1975), *aff'd, State v. Evans*, 278 Md. 197, 362 A.2d 629 (1976), Judge Moylan recognized the danger of that possibility:

The word "aforethought" is today an absolutely useless appendage on our law. It has over the centuries been utterly drained of any meaning whatsoever. As a word of no utility but with an ever-present potential for confusion (some may innocently think that "afore-thought" means aforethought), it should be struck from the lexicon of our homicide law.

But in this case while Judge Hamill's instructions did not, with regard to his use of the words, "Malice aforethought," explain those words as clearly as did the Court in *Gagne v. Meachum, supra*, Judge Hamill did not confuse malice aforethought and premeditation and rather clearly and correctly explained the difference between first degree versus second degree murder.

The same cannot be said as to the trial judge's charge concerning second degree murder versus manslaughter.

In its per curiam opinion rejecting Guthrie's quest for post-conviction relief, the Court of Special Appeals wrote:

Notwithstanding this [the fact that the instructions were erroneous], we note that in *Evans v. State*, 28 Md.App. 640, 349 A.2d 629 (1975), affirmed *State v.*

*Evans*, 278 Md. 197, 349 A.2d 300 (1976), we said at 28 Md.App. 658, 349 A.2d 300:

By the same token, any error in instructing as to the allocation of the burden of persuasion on the subject of mitigation (such mitigation, for purposes of holding the homicidal *mens rea* down to the manslaughter level, being fairly an issue in the case) will have to be cured by a verdict of murder in the first degree. The evil aimed at by *Mullaney v. Wilbur, supra*, where the issue is manslaughter versus murder, is that a presumption of malice unfairly relieves the State of the burden of proving non-mitigation (mitigation being fairly an issue in the case). Where the ultimate verdict is that of murder in the second degree, the presumption may, therefore, have been pivotal. Where, on the other hand, the verdict is murder in the first degree, the State will have proved every element, including the negating of hot blood, beyond a reasonable doubt and due process will not have been offended." (footnote omitted).

In the instant case while mitigating circumstances were generated by the evidence, we consider that the finding of a verdict of first degree murder not only proved all the necessary elements but also negated any mitigating circumstances. [Citations omitted.] [17]

In *Sandstrom v. Montana*, 442 U.S. 510, 512, 99 S.Ct. 2450, 2453, 61 L.Ed.2d 29 (1979), the trial judge had instructed the jury that "[t]he law presumes that a person intends the ordinary consequences of his voluntary acts." Justice Brennan stressed (at 515) that the jurors "were not told that they had a choice, or that they might infer that conclusion; they were told only that the law presumed it. It is clear that a reasonable juror could easily have viewed such an instruction as mandatory." [Citations omitted].

Herein, Judge Hamill's instructions as to self defense could perhaps have conveyed to the jury that Guthrie had the burden of

17. *Guthrie v. Maryland*, No. 125, slip op. at 3–4 (Md.Ct.App. Sept. 21, 1977).

proving self defense.[18] In addition, the trial judge told the jury that "[t]he law further presumes all murder is murder in the second degree"[19] and that a person "who uses a deadly weapon * * * is presumed in law to intend the natural and probable consequences of that act, until a contrary intent is established * * *."[20] Those quoted statements appear to run afoul of the principles established by *Sandstrom* and its predecessor Supreme Court opinions. However, the error committed in *Sandstrom* by the trial judge as to the conclusiveness of a presumption related to manslaughter versus murder, not to first degree versus second degree murder. In this case, Guthrie testified that the victim, Aul, had pulled a gun and threatened to kill Guthrie:

> And at this moment, I took my hands to my pockets, I carry a pocket knife all the time for work and so forth, so I come out of my pocket with my pocket knife, and I thought the man was going to kill me. I didn't know the gun was a blank or nothing at the time. It was dark and you couldn't see. So anyway, he pointed the gun at me and told me he was going to kill me, and I stepped back from the car a few feet, and I did secure my pocket knife out of my pocket, and whenever Mr. Aul come out of the car, the gun was pointed at my face, and I took my left hand and knocked the gun to the side a little bit, and just as I did this here, it fired two shots, and at the same time, I was defending myself, or I thought I was anyway, by using the knife on Mr. Aul's stomach.
>
> Q. Then what happened?
>
> A. And then that period is as far as I remember, Mr. Stoven.[21]

The State specifically concedes that the trial judge erred in placing upon the defendant the burden of establishing heat of passion. Heat of passion, under Maryland law, reduces second degree murder to manslaughter. *See State v. Evans*, 278 Md. 197, 205–06, 349 A.2d 300 (1976). But herein

Judge Hamill did not err in distinguishing between first degree murder and second degree murder and the jury in this case found Guthrie guilty of first degree murder.

In *Wilkins v. State of Maryland*, 402 F.Supp. 76 (D.Md.1975), *aff'd without published opinion*, 538 F.2d 327 (4th Cir. 1976), *cert. denied*, 429 U.S. 1044, 97 S.Ct. 747, 50 L.Ed.2d 757 (1977), the question was raised as to whether the jury instructions distinguished adequately between the defendant's burden of moving forward with some evidence to reduce the crime to manslaughter and the state's ultimate beyond-a-reasonable-doubt burden of persuasion of the existence of all elements of second degree murder. In *Wilkins*, the jury had returned a verdict of guilty of first degree murder. For that reason, Judge Blair held that any blurring of the line between lesser degrees of homicide was immaterial and denied federal habeas corpus relief, writing (at 80):

> [T]he jury convicted Wilkins of murder in the first degree. In finding Wilkins guilty beyond a reasonable doubt of the willful, deliberate and premeditated killing of the victim—or alternatively, of killing the victim during the perpetration of a robbery—the jury necessarily rejected, *beyond a reasonable doubt*, that the defendant acted recklessly without an intention to take a life or in the heat of passion. Phrased otherwise, in proving the elements of first degree murder beyond any reasonable doubt in the jurors' minds, the state necessarily disproved manslaughter beyond a reasonable doubt. Accordingly, the gist of *Mullaney v. Wilbur, supra,* that the State prove all elements of an offense beyond a reasonable doubt, is satisfied in fact. And, any arguable error in the jury instructions was harmless beyond a reasonable doubt. *Harrington v. California*, [89 S.Ct. 1726, 23 L.Ed.2d 284] *supra; Chapman v. California*, [386 U.S. 18, 87 S.Ct. 824, 17

---

**18.** *See* p. 3 *supra*.

**19.** *See* p. 4 *supra*.

**20.** *See* p. 5 *supra*.

**21.** Tr. 369.

L.Ed.2d 705] *supra.* [Emphasis in original.]

In *Wilkins,* Judge Blair also held as an alternative ground for his disposition in that case (at 80):

Finally, it is important to note that no evidence whatsoever was introduced at the trial, which would have supported a rational finding of manslaughter, as opposed to second degree murder. On the other hand, the evidence strongly supported the jury's verdict of first degree murder. A clarification or change in the manslaughter instruction would have had no effect on the result. *Cf. Harrington v. California,* [395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969)].

Herein, the evidence could seemingly have supported a verdict of manslaughter. That would appear to be so even though it is to be noted that Judge Getty, in the course of denying post-conviction relief to Guthrie, concluded that the evidence in this case did not generate evidence that the killing was in the heat of passion. Guthrie testified that he was intoxicated at the time of the killing and that the killing occurred after Aul had attempted sexually to molest him and had exhibited a gun. There was also evidence that Guthrie suffered from mental disorder. Judge Hamill himself gave a manslaughter instruction. That strongly suggests that he considered that a verdict of manslaughter was permitted by the evidence. If the jury believed all or even less than all of the evidence relating to self defense and sexual molestation, it might well have concluded that Guthrie acted in self defense or in the heat of passion.

In *Hunter v. Williams,* 570 F.2d 510, 511 (4th Cir. 1978), in rejecting the State's contention that the giving of an erroneous manslaughter instruction was harmless error and that the evidence in the record did not support a verdict of manslaughter and supported only a verdict of murder, Judge Widener wrote:

The district judge found that the decedent and the accused may well have renewed a previous quarrel which took place the same evening of the shooting in question. In addition, we note that the altercation took place in a dance hall in which there was a large crowd; those drinking included both the decedent and the accused; a girl friend of the accused, with whom he had only a few days before engaged in a lover's quarrel, was sitting nearby, and only a short while elapsed between the previous quarrel and the shooting.

While we do not for a moment suggest there was no evidence of murder in the State trial, we do think an instruction as to manslaughter was not uncalled for in consideration of all the evidence and that the district court was correct in requiring that it be framed in the light of *Mullaney* which has been held to be retroactive in *Hankerson v. North Carolina,* 432 U.S. 233, 97 S.Ct. 2339, 53 L.Ed.2d 306 (1977).

In Hunter, however, once again, the error concerned murder versus manslaughter. By contrast, *see Flournoy v. Riddle,* 631 F.2d 728 (4th Cir. 1980) (per curiam). In that case, the Fourth Circuit, citing *Wilkins,* noted that the issue of the constitutionality of a presumption of malice, once an unlawful homicide has been proven, was of "questionable relevance to petitioner's conviction for first-degree murder." *See also Street v. Warden,* 423 F.Supp. 611, 614 n.1 (D.Md.1976) (Young, J.), *aff'd,* 549 F.2d 799 (4th Cir. 1976) (unpublished opinion), *cert. denied,* 431 U.S. 906, 97 S.Ct. 1700, 52 L.Ed.2d 390 (1977); *Teves v. State,* 33 Md. App. 195, 198–99, 364 A.2d 593 (1976), and the cases cited therein.

■ The jury instruction errors herein all relate to second degree murder versus manslaughter. The jury's verdict of guilty of first degree murder renders those errors harmless. This is not a case such as *Robinson v. Warden, Maryland Penitentiary,* 518 F.Supp. 219 (opinion filed today by this Court), in which the jury instruction error relates to second degree murder versus manslaughter and involves credibility of certain testimony. Thus, in this case, the primary holding in *Wilkins,* and the Court of Special Appeals' reliance on *Evans* in denying Guthrie post-conviction relief, are

fully applicable. Additionally, Judge Hamill's instructions read as a whole as they must be, *see Gagne v. Meachum, supra* at 1217–18, and cases cited, thereat, distinguish adequately between first degree murder and second degree murder. Those instructions remain sufficiently untarnished by the erroneous second degree murder-manslaughter parts of the charge when all of the instructions are considered in their totality. Accordingly, judgment will be entered herein for the defendant.