**Ronald Fitzgerald ROBINSON**

v.

**WARDEN, MARYLAND PENITENTIARY.**

Civ. No. K–78–2569.

United States District Court,
D. Maryland.

June 29, 1981.

Harold Buchman, Baltimore, Md., for plaintiff.

Stephen H. Sachs, Atty. Gen. of Maryland, and Donald R. Stutman and Stephen Rosenbaum, Asst. Attys. Gen., Baltimore, Md., for defendant.

FRANK A. KAUFMAN, Chief Judge.

Robinson, seeking federal habeas corpus relief for the first time, contends that the instructions given at his trial improperly placed the burden of proof of an alibi defense upon him, and that that error was not harmless.

On June 14, 1973, Robinson was convicted in the Circuit Court for Calvert County, Maryland, Judge Bowen presiding, of murder in the first degree, assault with intent to murder, attempted robbery with a deadly weapon, and the unlawful use of a handgun. Judge Bowen sentenced Robinson to two terms of life imprisonment, and additionally to certain terms of years. Robinson's conviction was affirmed on direct appeal by the Court of Special Appeals of Maryland. *Robinson v. State*, 20 Md.App. 450, 316 A.2d 268 (1974). Judge Moylan, writing for that Court, held that the alibi instruction given to the jury by Judge Bowen was unconstitutional, but that the error in that regard was harmless beyond a reasonable doubt. Before reaching the merits Judge Moylan held that review on the merits was not foreclosed by Maryland's contemporaneous objection rule.

After the Court of Special Appeals affirmed Robinson's conviction, the Court of Appeals denied Robinson's application for Certiorari review. *Robinson v. State*, 272 Md. 747 (1974). Subsequently, Robinson sought post-conviction relief. On June 22, 1978 Judge Levin, sitting in the Circuit Court for Calvert County, denied relief as to the first degree murder conviction but did vacate Robinson's conviction for attempted robbery with a deadly weapon because that lesser offense was deemed merged into the other convictions. The Court of Special Appeals denied Robinson leave to appeal Judge Levin's post-conviction determinations. Accordingly, Robinson has exhausted his state remedies.

At the close of Robinson's trial Judge Bowen gave the following alibi instruction to the jury:

Now, the defendant in this case asserts the evidence of an alibi. Now you will understand, ladies and gentlemen, that an alibi is what we call an affirmative defense. It is of course a complete defense if you believe it. Obviously a person who is not at the scene could not complete the crime. We say it is an affirmative defense because this is the one time in this case where the defendant has the burden of proof. It is the only thing in the case as to which he has the burden of proof. On the defense of alibi the defense has the responsibility to satisfy you by a fair preponderance of the evidence that he was not in fact in the store and in fact was somewhere else. Now evidence has been introduced tending to show that the defendant was not present at the time and at the place where these offenses were committed. The defendant may not be convicted of the offenses with which he is charged unless the state proves beyond a reasonable doubt that the defendant was present at the time and place where the offense was committed. If after full and fair consideration of all the facts and circumstances in the evidence you find that the defendant has satisfied the fair preponderance of the evidence concerning this man and that he was in fact somewhere else and not at the scene, then he must be acquitted.

The crime in question took place at the Lenox Furniture Store in Prince George's County on November 8, 1972 between 2:00 p. m. and 3:00 p. m. Two employees were shot to death. A third employee, Robert Loewy, was shot twice but lived. Mr. Loewy testified at trial that during the late morning hours of November 8, around noon, an individual entered the store. Loewy spent some time selling a lamp to the man. Although Loewy's possible in-court identification was suppressed, Loewy described the man to whom he sold the lamp as dressed in a dark black imitation fur coat, a black shirt with a green tie, and gray striped pants. He also identified a sales ticket for the lamp which he (Loewy) has written for the man under the name of "Jeffrey Robinson," although the ticket was signed in the name of "Ronald Robinson."

Loewy also testified that when the same man came back to the store in the afternoon to return the lamp or to exchange it for other merchandise, Loewy again spoke with him. Loewy also testified that when the man so returned to the store, the man suddenly became violent, shot two of Loewy's fellow employees, as well as Loewy, took money from the cash register, and fled.

Richard Marcus, a student and part-time employee, began work immediately before the shooting. Marcus, who escaped injury, had observed the assailant on and off for approximately fifteen minutes and identified Robinson as the assailant.

Staff Sergeant Claude Jefferson, a neuropsychiatric supervisor at Walter Reed Hospital, was in the store when the assailant entered in the afternoon. Sergeant Jefferson left before the shooting but identified Robinson as the gunman. He also identified the lamp in question as the one returned by the assailant.

An F.B.I. agent identified a fingerprint found on the lamp returned by the gunman, and another fingerprint at the site, as Robinson's fingerprints. An F.B.I. handwriting

expert testified that the signature "Ronald Robinson" on the sales slip for the lamp had been written by Robinson. The police recovered from Robinson's house clothing which matched Loewy's description of the gunman's clothing. When Robinson was arrested, police seized a loaded long-barrelled .22 caliber revolver from his car, which Robinson then stated was his own. At trial, a ballistics expert testified that the bullets which had hit the victims could have been fired by Robinson's gun, but that those bullets were too mutilated to admit of positive identification.

When Robinson was arrested, he orally denied to the police ever having been in the Lenox Furniture Store, and also claimed that he (Robinson) had been shooting basketball at an indoor recreation center during the time of the killings. At trial, the manager of the recreation center testified that no one had used the basketball court that afternoon.

During the trial Robinson called three witnesses. The first, an elderly female relative, variously identified as Robinson's cousin, aunt, and grandmother, testified that Robinson chopped wood for her from shortly after 11:00 a. m. until around 3:40 p. m.; that about 3:40 p. m., Robinson made a telephone call from her house while he ate; and that at about 4:15 p. m., Robinson went to the Post Office to pick up a check for her. On rebuttal, the State presented evidence that two days after the robbery, the elderly relative had denied, in a statement to the police, that she had seen Robinson for two years, or since the time of his marriage. That statement was made to the police when they visited the elderly relative at 2:00 a. m. in search of her grandson. Quite possibly, at that hour, the officers may have aroused her from her sleep, and she may have been confused. She may also have fabricated at that time to help prevent Robinson's arrest, and have told the truth at trial.

During the trial, the parties stipulated that had she been called, a Postmistress would have testified that she had known Robinson most of his life, and that at about 4:00 p. m. on the day of the killings Robinson picked up a check for his grandmother. While that stipulation does not account for Robinson's whereabouts between 2:00 p. m. and 3:00 p. m. when the offense occurred, it does corroborate, at least with regard to the one particular relating to the visit to the Post Office, the elderly relative's testimony. Robinson's seventeen year old girlfriend testified that on the day in question, Robinson called her at about 2:30 p. m. and the two spoke until 3:00 p. m.

Writing for the Court of Special Appeals, in affirming Robinson's conviction upon his direct appeal, Judge Moylan (at 20 Md.App. *supra* at 465–466, 316 A.2d 268) concluded:

In view of the overwhelming evidence of the appellant's guilt, we are persuaded beyond all doubt that the feeble, contradictory and contradicted effort to assert an alibi could have had no conceivable bearing on the jury's ultimate verdicts whatever the instruction as to the alibi might have been.

In *Davis v. State*, 285 Md. 19, 400 A.2d 406 (1979), Judge Orth reviewed the history of the alibi defense in Maryland case law and held that the opinions of the Court of Appeals of Maryland, while often not followed by trial judges, did not permit the alibi instruction at issue herein and required that the burden of disproving an alibi be borne by the prosecution. Accordingly, he held that the Supreme Court's opinions in cases such as *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970) and *Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975), did not change the law in Maryland and that accordingly, Maryland's contemporaneous objection rule was applicable. *See* the opinion in *Guthrie v. Warden, Maryland Penitentiary*, 518 F. Supp. 546 (D.Md.1981). Herein the State does not urge application of that rule. Nor may it since the Court of Special Appeals of Maryland specifically stated that it did not consider the appeal from Robinson's conviction barred by his failure to object during the trial to the alibi instruction, reached the merits of Robinson's alibi jury instruction

contention, and held that alibi instruction to be plain but harmless error. Since the Court of Special Appeals reached the merits, this Court will so do. *See Baker v. Muncy*, 619 F.2d 327, 329 (4th Cir. 1980). *See also Moran v. Estelle*, 607 F.2d 1140, 1143 (5th Cir. 1979). No principle of comity or of deference to state law is offended thereby. *See County Court of Ulster County v. Allen*, 442 U.S. 140, 147–54, 99 S.Ct. 2213, 2219–23, 60 L.Ed.2d 777 (1979).[1]

Reaching the merits in this case carries with it the need to grapple with a very difficult question, namely, as Chief Judge Brown put it in *Vaccaro v. United States*, 461 F.2d 626, 635 (5th Cir. 1972), "whether the giving of a charge incorporating an unconstitutional presumption can ever be characterized as harmless." Judge Brown's discovery was that while "the law is something less than clear" (at 635), such error can under some circumstances be harmless. Thus, he wrote (at 637):

> * * * [T]he recent Supreme Court decisions regarding "harmless constitutional error" specifically reject the "overwhelming evidence of guilt" approach and stress instead that the relevant inquiry is "whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction." *Chapman v. California, supra*, 356 [sic] U.S. [18] at 23, 87 S.Ct. [824] at 827, [17 L.Ed.2d 705] citing *Fahy v. Connecticut*, 1963, 375 U.S. 85, 86–87, 84 S.Ct. 229, [230] 11 L.Ed.2d 171, 173. Only if the Court can declare with confidence "beyond a reasonable doubt," *Chapman, supra*, 386 U.S. at 24, 87 S.Ct. 824, that such a possibility is excluded by the record can it pronounce a constitutional error to be harmless.

What has in the past and does today constitute harmless error in British and American case law provides a murky field for exploration as Chief Justice Traynor has demonstrated in his book entitled The Riddle of Harmless Error (1970). Judge Brown, in *Vaccaro*, (at 634–40) reviewed in depth *Chapman v. California*, 386 U.S. 18,

87 S.Ct. 824, 17 L.Ed.2d 705 (1967), and *Harrington v. California*, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969); Justice Stewart's reliance in his concurring opinion in *Chapman* 386 U.S. at 42, 87 S.Ct. at 836–37 upon Justice Frankfurter's exposition in *Bollenbach v. United States*, 326 U.S. 607, 66 S.Ct. 402, 90 L.Ed. 350 (1946); the Supreme Court opinions handed down subsequent to *Chapman* and *Harrington* ; and the holdings of the Fifth and Ninth Circuits in a number of cases. Judge Brown observed (at 638) that "[c]redibility choices are to be resolved in favor of the accused." Taken literally and without regard to his detailed analysis, Judge Brown's said statement would appear to establish an absolute rule against application of the harmless doctrine in a case such as this one. But seemingly there are always credibility issues when there is a jury instruction error concerning burden of proof as to an alibi. And Judge Brown rather clearly suggests rejection of any such *per se* rule. In the end, Judge Brown concluded (at 638):

> The inquiry is not, as suggested by the government, whether the defendant was "substantially prejudiced" by the instruction, but rather whether the government has established, beyond a reasonable doubt, that there is no reasonable possibility that the instruction might have contributed to the guilty verdict.

Since Judge Brown wrote in *Vaccaro*, there have been many cases in which the harmless error doctrine has been analyzed in contexts similar to that presented herein. *See, e. g., Kentucky v. Whorton*, 441 U.S. 786, 789, 790–91, 99 S.Ct. 2088, 2089, 2090–91, 60 L.Ed.2d 640 (1979) (majority and dissenting opinions); *Henderson v. Kibbe*, 431 U.S. 145, 154–55, 97 S.Ct. 1730, 1736–37, 52 L.Ed.2d 203 (1977); *Krzeminski v. Perini*, 614 F.2d 121, 125 (6th Cir.), cert. denied, —— U.S. ——, 101 S.Ct. 199, 66 L.Ed.2d 84 (1980); *United States v. Alston*, 551 F.2d 315, 320–21 (D.C.Cir.1976) (Bazelon, C. J.); *Trimble v. Stynchcombe*, 481 F.2d 1175, 1176 (5th Cir. 1973); *Rogers v. Redman*, 457

---

1. Those cases are discussed or quoted from in some detail in *Guthrie v. State, supra*.

F.Supp. 929 (D.Del.1978); *Graham v. Maryland*, 454 F.Supp. 643, 651 (D.Md.1978). Some of the opinions in certain of those cases do contain flat statements that the error cannot be harmless when credibility is involved. However, none of them recite and analyze facts in detail so as to answer the question of whether there was a "reasonable possibility that the [erroneous] instruction [to the jury] might have contributed to the guilty verdict." *Vaccaro* at 638. Herein, a reading of the record rules out, almost all but mathematically, that possibility. The fingerprint, the handwriting and other evidence conclusively tie Robinson to the lamp. Judge Moylan's characterization of Robinson's alibi defense as "feeble" is entirely apt. If an erroneous jury instruction concerning burden of proof as to an alibi defense can ever be harmless, this would appear to be that case. Judge Bowen's error could, in theory, have affected the jury's credibility assessments. But if that theoretical possibility is controlling, then seemingly no error which affects credibility can ever be harmless.[2] The preference of the captain in Sir William S. Gilbert's H.M.S. Pinafore for "hardly ever" to "never" comes to mind. Surely it is and should be true that such error can hardly ever be harmless. But to say that such error can never be harmless seems inflexibly to call for a non-common sense result in a case such as this one, particularly since, in practical effect, the grant of federal habeas corpus relief herein would retroactively apply legal principles which are being followed by the Maryland courts today, but often were not followed by them when Judge Bowen charged the jury at the close of Robinson's trial. *See Vaccaro, supra* at 637. Thus, there would seem no prophylactic reason to disturb the conviction which Robinson challenges in this federal setting.[3] In sum, for the reasons stated *supra*, this Court declines to apply a *per se* rule against the application of the harmless error doctrine in this case in which, while a credibility issue is theoretically present, the record offers no reasonable possibility that the trial judge's error affected the jury's verdict. Judgment will accordingly be entered for defendant.

---

**2.** *Cf. Butler v. Bensinger*, 377 F.Supp. 870, 874 (N.D.Ill.1974), in which Judge Marovitz wrote in the course of granting summary judgment:

> In determining whether there is any triable issue the court should not pass upon the credibility of opposing affidavits, unless the evidence tendered by them is too incredible to be accepted by reasonable minds. The burden is upon the moving party to establish the lack of a triable issue of fact, and all doubts are resolved against him. Finally, supporting affidavits may be insufficient to satisfy the burden imposed on the moving party even though the opposing party fails to present any competent counter-affidavits or

other materials; the opposing party need not show that the issue would be decided in his favor, but need only show that there is a triable issue. *See generally*, 6 J. Moore, Federal Practice ¶ 56.11[3].

**3.** It is true that Judge Orth's analysis in *Davis v. State, supra*, rules out the need for strict retroactive application of the Supreme Court's decisions handed down since Robinson's trial. Nevertheless, as indicated, we are, in this case, dealing with an erroneous jury instruction which was often given in Maryland in 1973 before *Mullaney v. Wilbur, supra*, was decided.